## WILLIAM W. NELLIS v. THE NEW YORK CENTRAL RAILROAD COMPANY.

Under chapter 228 of the laws of 1857, which provides that the New York Central Railroad Company, at every station on its road where a ticket office shall be established, shall keep the same open for the sale of tickets at least one hour prior to the departure of each passenger train from such station, but that they shall not be required to keep such offices open between nine P. M. and five A. M., except at Utica and six other stations on its road; and that if any person shall, at any station where a ticket office is established and open, enter the cars as a passenger without first having purchased a ticket, it shall be lawful for the company to demand and receive from him a sum not exceeding five cents, in addition to the usual rate of fare; the extra fare can only be demanded when the passenger fails to purchase his ticket at an established ticket office that is open.

If the ticket office is not open, no ticket can be procured, and no right exists to demand the extra fare.

So held where the plaintiff entered the cars of the company, at Utica, as a passenger, at one o'clock A. M., without having first procured a ticket, the ticket office not being then, nor for an hour previous to the departure of the train at one o'clock, open.

And *held*, that the company, having assumed to demand and receive from the plaintiff five cents, in addition to the legal fare, under these circumstances it " asked and received a greater rate of fare than that allowed by law," and was thus brought within the provisions of the first section of chapter 185 of the laws of 1857, and was liable to the penalty of $50 mentioned in that section.

*Held*, also, that in an action against the railroad company, to recover the forfeiture of $50, it was not necessary that the complaint should set out the various enactments consolidating the several companies which make up the New York Central Railroad Company, so as to show that the latter company is restricted to a fare of two cents per mile for each passenger; but that it was enough to allege that the defendant had been duly organized; that it was entitled to demand and receive of passengers a certain rate of fare, and that it had demanded and received a higher rate.

BY chapter 185 of the laws of 1857, it was enacted that any railroad company which shall ask and receive a greater rate of fare than that allowed by law shall forfeit fifty dollars, which sum may be recovered, together with the excess so received, by the party paying the same, but it

shall be lawful and not construed as extortion for any railroad company to take the legal rate of fare for one mile for any fractional distance less than a mile.

By chapter 228 of the same year, it was enacted that the New York Central Railroad Company at every station on its road, where a ticket office then was or might be thereafter established, should keep the same open for the sale of tickets, at least one hour prior to the departure of each passenger train from such station; but they were not required to keep such offices open between nine P. M. and five A. M., except at Utica and six other stations on its road. At these stations the offices were to be kept open between five A. M. and 11 P. M. By the second section of the same chapter, it was provided that if any person shall at any station where a ticket office is established and open, enter the cars of said company as a passenger thereon, without first having purchased a ticket for that purpose, it shall be lawful for the company to demand and receive from such person a sum not exceeding five cents, in addition to the usual rate of fare for the distance such person may desire to be transported.

The plaintiff in his complaint alleges in substance, that the defendant is a corporation duly organized, and that on the 18th May, 1857, at about 1 A. M., the plaintiff being desirous of being carried on defendant's cars from Utica to Albany, a distance of ninety-five miles, and no more, the plaintiff went to the ticket office of the defendant, established at Utica, about ten minutes before one o'clock A. M., the time fixed for the departure of the train from Utica to Albany, to purchase a ticket, by means whereof he could be transported over said defendant's road from Utica to Albany, and was ready and desirous to purchase and pay for the same, the lawful price, but such ticket office was not open, and no ticket could be procured therefrom, and was not open at any time within the hour preceding the departure of said train. That he took his seat in said train at the city of Utica; that soon thereafter the conductor of

said train, who was the duly authorized agent of the defendants, demanded and received of plaintiff the sum of $1.95 for his fare, although informed that the office was not open, and a ticket could not for that reason be procured, which the conductor conceded, but nevertheless demanded and received $1.95 for the plaintiff's fare from Utica to Albany, while the plaintiff insisted it was but $1.90, and the plaintiff was compelled to pay and did pay $1.95 for his fare. And that by reason thereof, the said defendant did ask and receive from the plaintiff a greater rate of fare than that allowed by law, to wit: the sum of five cents, and it thereby became liable to pay said plaintiff the sum of $50.05, and for that sum this action was brought.

The defendant demurred to the complaint, alleging as grounds of demurrer:

1. That it did not state facts sufficient to constitute a cause of action; and

2. That it did not appear by the complaint that the defendant did not keep its ticket office at Utica open at least one hour prior to the departure of each passenger train between five A. M. and eleven P. M., prior to and including the 18th May, 1857; and that it does not appear that the defendant did not keep said office open for the sale of tickets on the 17th May, 1857, from five A. M. till eleven P. M.; nor does it appear that the plaintiff paid any greater rate of fare than that allowed by law.

The demurrer was overruled at a special term in the fifth district, with leave to the defendant to answer on payment of costs in twenty days. If the defendant did not answer and pay costs in twenty days, then judgment was ordered for the plaintiff on the demurrer, with costs.

From this order the defendant appealed to the general term of the fifth district, by which it was affirmed, with costs, and with leave to the defendants to answer on payment of costs. The defendant did not answer, and thereupon judgment was entered for the sums demanded in the complaint, with costs.

From the judgment, and from the order of the general term, the defendant appealed to this court.

*Cox & Avery,* for the appellants.

I. In this state the rate of fare on railroads is established by statute at three cents per mile. (Act of April 2, 1850, sec. 28, subdiv. 9; Act of March 27, 1857.)

II. If any facts exist, which in the case of this particular road take it out of the general railroad act (of April 2, 1850), they should have been averred in the complaint. Particularly as the consolidation act is permissive and prospective, taking effect only upon the contingency of consolidation. (Vide sec. 7 of Act of April 2, 1853.)

III. The contingency contemplated by section seven not being averred in the complaint to have occurred, the reduction of fare (to two cents per mile), which was only to take effect upon that contingency cannot be assumed. Consequently the rate of fare *quoad hoc* remains three cents per mile. These, then, are the facts, and this the law before the court. The distance here traveled was 95 miles, which, at three cents per mile, is $2.85. We exacted $1.95—less than we were entitled to by 90 cents.

IV. Every issuable fact material to the right of action must be averred in the complaint. (Code, § 142; 13 How. Pr. 220; 2 Duer, 674; 5 Sandf. 566; 3 Seld. 478.) Averments of law (e. g. lawful fare, unlawful, &c.), are insignificant. (13 How. Pr. 35; 14 How. 163, 286; 23 Barb. 575, and cases; 4 Seld. 366.) Upon the merits of this case, when we come to examine them, it will be found, we think that the plaintiff had no action for this penalty. If this court will take judicial notice of the private statute (of April 2d, 1853), authorizing prospectively the consolidation of the several companies named; and also of the fact of such consolidation subsequently occurring, and that this defendant is the result; then we say.

V. We had the right to exact this five cents " in addition

to the usual rates of fare." Because the party had no
ticket. The statute defines defendant's obligations and
privileges. (Chap. 218 of Acts of 1857.)

" Section 1. The New York Central Railroad Company
at every station on its road where a ticket office is now, or
may hereafter be established, shall keep the same open for
the sale of tickets, at least one hour prior to the departure
of each passenger train from such station; but nothing
herein contained shall require said company to keep such
office open between nine o'clock P. M. and five o'clock A.
M., except at Albany, Schenectady, Utica, Syracuse, Roches-
ter, Buffalo and Suspension Bridge, which shall be kept
open as hereinbefore required, between five o'clock A. M.,
and eleven o'clock P. M.

Section 2. If any person shall at any station where a
ticket office is established and open, enter the cars of said
company as a passenger thereon, without having first pur-
chased a ticket for that purpose, it shall be lawful for the
said company to demand and receive from such person a
sum not exceeding five cents in addition to the usual rate
of fare," &c.

We are to keep our office open at Utica from five A. M. to
eleven P. M. The meaning and extent of the word used
in the statute, " established and open," is thus clearly
defined in section one of that act. By keeping the office
open during those hours, we have our office " established
and open," for the purposes of that act. The averment in
the complaint, that our office was not open at one o'clock
in the morning, does not affect our rights under that statute.
According to the view which prevailed in the supreme
court in this cause, a passenger taking the train at Utica at
half-past eleven P. M., might refuse to pay this five cents
(although he had the whole day to buy a ticket), and fur-
thermore the company are liable to the penalty given by
chapter 185 (Acts of 1857), for receiving it.

VI. This "Act to prevent extortion," (of March 27,
1857,) was never contemplated by the legislature to be

applicable to such cases as this. It was passed four days before this act of April 1 (giving us the right to receive five cents). The presumption that upon this occasion we took the five cents because the party had no ticket, is not repelled by anything stated in the complaint; and as against a party seeking to impose a penalty, must be the lawful presumption, for whenever an act can be attributed to a lawful motive, it always is thus attributed. Can it be true that, for an error of judgment in the construction of this act of April 1, 1857, which was intended by the legislature for the benefit and relief of the defendant, the penalty given for a willful offence is incurred?

VII. Because the general railroad law of this state gives to railroad companies, as such, the right to demand three cents a mile for passenger travel, and there is no averment in the complaint to take the case out of that act; and because an error in construing a statute intended for our benefit cannot amount to a willful demanding of "a greater rate of fare," we ask that this judgment be reversed.

*Ward Hunt*, for the respondent.

I. The defendant had no authority to demand and receive this additional sum of five cents, beyond the legal fare. (Laws of 1857, p. 432–488; *Porter* v. *N. Y. Central R. R.* 34 Barb. 353.)

1. A ticket office was established for the sale of tickets at the Utica station.

2. It was not open for the sale of tickets at the time of the departure of the train, and had not been at any time during one hour prior to such departure.

3. This sum can only be charged where the ticket office is open at the departure of the train, and the passenger enters the cars without first purchasing his ticket.

(*a.*) The act does not even say when the office is "so open," or "open as above provided," but simply when "it is open," i. e., "when the office is actually open when the train starts."

(b.) This is the reasonable meaning of the statute. If the defendant is at the trouble and expense of keeping its office open, and if it gives the plaintiff the means of buying his ticket when he comes to the station to start, the plaintiff should give the defendant this advantage, if it is deemed such, of selling tickets at the office. While, if there is no opportunity so to purchase, the defendant is not entitled to the advantage, and there is no reason why the plaintiff should pay any additional sum.

(c.) The suggestion that if the office is kept open from five A. M. until eleven P. M., the right is then given to exact the five cents on all occasions, is not tenable. It is opposed to the plain language of the provision. It is opposed to its reasonable construction. It is opposed to the universal habit and practice of the country. No man ever expects to purchase his ticket until a reasonable time before the departure of the train in which he is to start. This suggestion requires him to adopt a different system. The subjects of the first and second sections are distinct, and the two provisions are distinct. Section one requires positively that the office shall be open for a specified period on each day. Section two provides that when it is actually open, but without referring to the precise time directly or indirectly, then, if a ticket is not purchased, an additional fare may be charged.

II. The act of the conductor was the act of the agent. He was their agent to demand and receive fares from passengers, and if in so doing he demanded and received too much fare, the act was in the course of his agency, and was the act of the company. (34 Barbour, 353; 14 Howard, 468.)

1. It is so averred and admitted.

2. It must be so in the nature of things. The directors in a body demanding and receiving fare would occupy but the same position as that of the conductor, namely, an agent.

III. The five cents was received " as fare," and not by way of penalty or forfeiture.

1. It is expressly averred and admitted in the complaint and demurrer, that it was paid and received " as fare."

2. It was so in fact, and under the law of 1857, p. 488, chap. 228: " It shall be lawful to demand and receive five cents in addition to the usual rate of fare. The fare is fixed at two cents per mile, or any other sum, and in the case spoken of, the fare may be added to " in addition to the usual rate of fare." The fare is added to—is increased—by the sum of five cents. The legal or usual rate from Albany to Utica was $1.90. If he did not purchase a ticket, the usual rate or $1.90 became added to or increased, and thereupon " the fare" became $1.95.

3. There is nothing in the transaction of the nature of a penalty or forfeiture. This law does not require the purchase of a ticket in advance, nor does any other. The plaintiff had as perfect a right, so far as this law is concerned, to enter the cars and claim to be transported without a ticket as with a ticket. The only difference is, that in the one case his fare is $1.90, and in the other his fare is greater than the usual rate, and is $1.95. If the plaintiff had borne with him an infectious disease, he would have had no right to be in the cars, and might have been expelled. His expulsion would be in the nature of a penalty. If he had committed acts of violence or indecency, his right to a passage would have been forfeited, and he might have been turned out, or he might have been compelled to pay damages for any injury inflicted. But in the present case, there is no disease, no violence, no indecency — nothing that impairs his legal right. He is merely subject to an additional fare of five cents.

IV. It is averred and admitted that the defendant did " ask and receive from the plaintiff a greater rate of fare than that allowed by law, to wit: the sum of five cents." The defendant intended to do exactly what it did do, to wit: to demand $1.95 as the fare or price of transportation from Utica to Albany.

V. The complaint avers all the facts necessary to constitute a cause of action.

1. It is said that the general act allows three cents per mile to be demanded, and no facts are averred which place this company in any different position. (Laws of 1850, § 28, sub. 9.) Certain companies are allowed by law to charge three cents per mile. Certain other companies may be organized, that are permitted to charge only two cents per mile. (Laws of 1853, page 110.) The former might by law have charged $2.35 from Utica to Albany, the latter could charge but $1.90 by law. The complaint avers that the conductor charged and received $1.95 as the fare, and that that was five cents more than the law allowed. In other words, one dollar and ninety cents was what the law permitted to be charged for the fare, and the conductor demanded one dollar and ninety-five cents, and was therein guilty of the extortion condemned by the statute. This is a plain averment that the company was one of those organizations, whose fare is limited to two cents per mile.

2. " It is never necessary to aver matters which the court are supposed to know, and are bound to understand," (3 Coms. 188; 12 Wend. 70; 17 Wend. 88,) as a public statute or the common law, or the geography or public history of the country, or the contents of the almanac. The court takes judicial notice of many things, e. g., of the ordinary modes of transacting commercial business within this state, as of statutes regulating banks and their business, and the ordinary rate of exchange between commercial cities. (10 Barb. 406; 4 Seld. 182.) Also of the ordinary duration of human life. (6 Duer, 633; 20 N. Y. 65.) Also of notorious facts, such as the usual time required for steamers to cross the Atlantic. (3 Sand. Ch. 571; 4 N. Y. Leg. Obs. 259.) The courts take judicial notice of the civil divisions of the state. (6 Hill, 475; 7 Cow. 429.) The court will take judicial notice of the occurrence of Sundays, as that the third day of grace fell

33

on Sunday. (7 Wend. 460.) Also that circulating notes of banks are signed by the president and cashier; that deposits are received and paid out by the clerks, tellers and cashiers; that certificates of deposit and certificates upon the face of checks are signed by the same class of officers, or one of them. (26 How. Pr. R. 1; *Farmers' & Mechanics' Bank* v. *Butchers' & Drovers' Bank*, 16 N. Y. 125; 4 Kern. 623.) The court know, therefore, that the act of 1853 was passed, authorizing the ten railroad companies therein named to consolidate into a single company. The court know, also, that that act was accepted and carried into effect, and that the New York Central Railroad Company, extending from Albany to Buffalo, was the result of such consolidation. They know it from general history, from the records of the secretary of state's office, and from legislative recognitions of its existence. Thus the act of 1857, chap. 228, page 488, recognizes the New York Central Railroad Company as extending from Albany to Buffalo, and as having offices at each of these places. It establishes, also, that the New York Central was organized from and by the companies named in the act of 1853. So the act of 1857, chap. 431, page 856, recognizes this New York Central as existing in Cayuga county, and we aver it to be running its cars from Utica to Albany. Also the act of 1862, chap. 120, page 271, directing the highway tax of said road, in the town of Mentz, in the same county, to be expended in a particular manner.

3. It is said that the complaint does not aver that the plaintiff is a way passenger, and that it is only as to way passengers that the charge is limited to two cents per mile. The suggestions already made, answer the objection. The court cannot refuse to know that Albany is the capital of the state, situated on the right bank of the Hudson river, and that Buffalo is a port upon Lake Erie. at the distance of three hundred and fifty miles from Albany, and that Utica is an intermediate point. Way passengers are here distinguished from through passengers, and it is not neces-

sary, under the most precise system of pleading, to aver that when a passenger traveled from Utica to Albany, he did not, in so doing, travel from Buffalo to Albany.

4. All these objections are to the form of the allegations rather than to the substance. They form the proper subject of a special demurrer, and not a general demurrer.

MULLIN, J. A railroad company is under no obligation to establish offices for the sale of tickets. If ticket offices are not established, passengers must pay their fares to the conductor on the cars. Such a system would throw great responsibility and labor on conductors, cause loss to the company, and be the source of annoyance to the passengers. All these consequences are avoided in a great degree, by the establishment of ticket offices, but the benefit is derived mainly by the company.

When, therefore, the legislature authorized the defendant to demand five cents, in addition to the usual fare, of every passenger not purchasing a ticket at a ticket office before getting on to the cars, the object was to compel, as far as such a provision could compel, travelers to purchase tickets, and thereby benefit the company.

If the law had stopped by giving the power to impose five cents on each passenger not procuring a ticket, it is quite clear that the effect of it would be merely to add five cents to the established fare, because it would be for the interest of the company to embarrass, and as far as possible to prevent the purchase of tickets at its offices.

To prevent such an abuse of a power given for the accommodation of the company, it was provided that the five cents should be exacted only of those who failed to purchase tickets at places where a ticket office is *established and open.*

This provision might be evaded. In order, therefore, to secure the public against liability to imposition, it was further provided that the defendant should keep its offices open one hour for the sale of tickets, prior to the depart-

ure of each passenger train from such station, between certain hours specified in the act.

Had the departure of the train on which the plaintiff traveled from Utica to Albany, at the time of the demand for the fare for which this action is brought, occurred during the hours the defendant's ticket offices are required to be kept open, and the one at Utica was not open, it could not be seriously claimed that a demand for the extra fare would have been justified, or that the penalty would have been incurred. But the plaintiff left at one o'clock in the morning, at which time the defendant was not required to open any of its ticket offices; and it is insisted that because the plaintiff did not do what it was impossible for him to do—to wit: buy a ticket before leaving Utica—he became liable to pay the extra fare. It seems to me, the proposition has but to be stated to be rejected as utterly unsound. To compel a passenger to pay a penalty because the company had deprived him of the power to travel for the regular fare, would be so oppressive and unjust that it would require a positive provision of a legislative act to induce any tribunal to sanction it. The statute is open to no such construction. The extra fare can only be demanded when the passenger fails to purchase his ticket at an established ticket office that is open. If it is not open no ticket can be procured, and no right exists to demand the extra fare.

It is urged that the word "open," in the 2d section of chapter 228, means open at the hours ticket offices are required to be kept open by the first section of that chapter. But it is quite clear that the first section was intended to protect the public against any evasion of the duty to afford a reasonable opportunity to purchase tickets, and to relieve the company from keeping its offices open at all its stations during the whole night. The legislature in effect say to the company, you shall keep your offices open one hour before the departure of each passenger train from each station, from five in the morning till nine in the evening, except in the larger towns they shall be kept open till

11 P. M. If you do this, and if passengers shall neglect to purchase tickets, you may charge each one five cents additional fare. But if your offices are not open you can get only the regular fare.

The Utica office was not open, as admitted by the demurrer, and hence there was no pretense for demanding extra fare.

The five cents which the defendant may charge is in addition to the usual rate of fare. By these words I understand the legislature to mean that the five cents is taken by the company as fare, and not as a penalty for omitting to buy a ticket. The legislature never permits parties to enforce the collection of penalties given by law to themselves. It was proper to permit the defendant to demand a higher rate of fare from one not complying with a regulation of the company than from those who conformed to it.

The complaint alleges and the demurrer admits that the distance from Utica to Albany is ninety-five miles, and that the fare is $1.90. I am unable to understand how, in view of these admissions, the defendant's counsel can claim that the defendant is entitled to charge three cents per mile, or any other sum greater than two cents per mile. If the law did permit a charge of three cents, it would not help the defendant, after the admission that the fare was, in fact, two cents per mile. For the purposes of this case, we must act on the allegations and admissions in the pleadings, whatever the law may be on the subject. The pleadings make the law, by which the rights of the parties must be determined.

When, therefore, the defendant assumed to demand five cents in addition to the legal fare, it " *asked and received a greater rate of fare than that allowed by law,*" and is thus brought within the provisions of the first section of chapter 185 of the laws of 1857, and is liable to the consequences of such violation of the provisions of the statute.

The defendant's counsel insists that the complaint should have set out the various enactments, consolidating the

several companies which make up the New York Central, so as to show that defendant is restricted to two cents per mile for carrying passengers over its road. I can perceive no more reason for setting out these statutes than there is for setting out the proceedings by which the several companies consolidated into the Central were incorporated and organized. It is enough to allege that the defendant has been duly organized, and that it is entitled to demand and receive of passengers traveling over its road, a certain rate of fare; and that it has demanded and received a higher rate. The acts of the legislature, and the proceedings of the separate companies, and of the defendant after consolidation, would be the evidence to establish the facts upon which the limitation of the fare which the defendant may charge, depends.

The court by taking judicial notice of these acts and proceedings could not relieve the defendant from the effect of its admission, deliberately made, that the fare was but two cents per mile—though by the act it might be six cents.

The order and judgment appealed from must be affirmed, with costs.

Selden and Ingraham, JJ., did not sit in the case. All the other judges being for affirmance.

Judgment affirmed.