JOHN BORDEAUX, RESPONDENT, *v.* THE ERIE RAILWAY COMPANY, APPELLANT.

*The Erie Railway Company — no obligation to keep open its ticket offices — Fare — payment of, at office or to conductor — different rates.*

Under section 14 of chapter 224 of 1832, authorizing the Erie Railway Company "to fix, regulate and receive the tolls and charges by them to be received for the transportation of property or persons," it may establish two rates of fare, discriminating between the cases where the ticket is purchased of a conductor upon a train, and where it is purchased at a ticket office.

The company is not bound to keep its ticket offices open at or for any particular time, and the fact that a passenger is unable to procure a ticket in consequence of the office being shut, will not entitle him to be carried to his place of destination upon payment of the amount for which he could have procured a ticket at the office had it been open.

APPEAL from a judgment of the County Court of Cattaraugus county in favor of the plaintiff.

The action was brought to recover damages occasioned by the ejection of the plaintiff from the defendant's cars, upon his refusal to pay the fare demanded of him by the conductor.

The plaintiff, on the 5th day of July, 1874, was in Olean wishing to go to Salamanca. The defendant's road connects these places, and the defendant has a depot and ticket office at Olean. The train was due at the depot in Olean about half-past nine P. M. The plaintiff got to the depot from ten to fifteen minutes before the train started. The ticket office was then closed, but the sitting room was open. Plaintiff went on the train for a few moments,

then went back to the ticket office; there was no one there, and he could not get a ticket. He then went on the platform, heard the conductor say all aboard, and got aboard. The conductor wanted his ticket. He told him he had none; that he had gone to the office three times and could not get a ticket. The plaintiff offered him sixty cents, which he would not accept, and asked plaintiff to pay him eighty cents, and told him if he did not pay eighty cents he would put him off the train. The distance is about twenty miles. The conductor informed the plaintiff that his orders were to take eighty cents, and that unless that amount was paid he should put the plaintiff off; and he did accordingly remove him from the train.

*E. C. Sprague,* for the appellant.

*Ansley & Vreeland,* for the respondent.

E. DARWIN SMITH, J. :

The defendant acquired its corporate rights under special acts of the legislature. (*Vide* Session Laws of 1832, chap. 224, p. 402, and id., 1860, chap. 160, p. 255.) Under section 14 of the act of 1832 the defendants were authorized " to fix, regulate and receive the tolls and charges by them to be received for the transportation of property or persons" on their railroad. The defendants, accordingly, had fixed two rates of fare on their said railroad, between the villages of Olean and Salamanca ; one rate of eighty cents, with a rebate of fifteen cents at the end of the route when the fare was paid to the conductor on the train ; and another rate of sixty cents when the fare was paid in the purchase of a ticket at any of their offices for the sale of tickets.

The defendants had a clear right to fix two rates of fare, discriminating between the case where the fare was paid to their conductors on their trains, and where it was paid at a collection office for the sale of tickets. (1 Redfield on Railways, 112, §§ 26, 28 ; *Hilliard* v. *Goold,* 34 N. Hamp., 230 ; *State* v. *Goold,* 53 Maine, 279 ; *Stephen* v. *Smith,* 29 Vermont, 160.)

In some of the cases where the question of this discrimination between fares paid in the purchase of tickets and fares paid to the conductors of trains has been considered, its lawfulness was held

to depend upon the question whether the passenger who was required to pay the higher fare to the conductor, had been unable to procure a ticket at a ticket office, without fault or neglect on his part.

The rule is asserted in this way in the case of *Jeffersonville R. R.* v. *Rogers* (38 Indiana, 116 ; 10 Am. Rep., 103).

In that case the plaintiff applied at the proper office to purchase a ticket from Indianapolis to Columbus, and was informed by the ticket agent that he had no ticket to Columbus. The court held that the plaintiff was entitled to ride upon the ticket fare, upon the payment or tender of that sum to the conductor. The same rule was asserted in *The Chicago, Burlington and Quincy Railroad* v. *Park* (18 Illinois, 460), and perhaps in some other cases in that State.

In these cases the question is not discussed upon principle ; and I can hardly conceive upon what principle they rest. The decisions may be correct under particular statutes in those States, or under the particular mode or terms in which the fares may have been fixed or established

The rule asserted in these cases is, in substance, that applied in this State, under express legislation, in respect to the New York Central Railroad Company, as asserted in *Porter* v. *said company* (34 Barb., 353); *Nellis* v. *Same* (30 N. Y., 505); *Chase* v. *Same* (26 id., 523). These cases were all actions for a penalty given by statute for taking illegal fares. The legal fare fixed by the statute for said railroad company is two cents a mile. A special statute allowed said company to require the payment of five cents in addition to such fare, of any passenger who entered the cars without first having purchased a ticket for that purpose, at any station where a ticket office is established and open ; and said statute required the said company should keep the said office open at least one hour prior to the departure of each passenger train from such station. ( *Vide* Laws of 1857, chap. 228, p. 488.) But there is no such statute relating to the Erie Railway ; and the charge of five cents, required where the fare is paid to the conductor, is not an enhancement of the legal fare, but is within the limit of such fare. On the contrary, the price of tickets sold at the office, is an abatement of the legal fare as fixed where the payment is made on the

cars. It is rather a privilege of the passenger, and an inducement to him to purchase his ticket at some office of the company before taking his seat in the cars, instead of paying his fare to the conductor on the train. (*State* v. *Goold*, 53 Maine, 282.)

The plaintiff in this action went to the defendant's depot on Sunday night about nine o'clock, to take the train to Salamanca, and found the ticket office closed, as he testified. He failed, for that reason, to get a ticket, and got on to the train, and when asked for his fare refused to pay the fare fixed for passengers paying the conductor on the train, and claimed to pay the ticket price of sixty cents. Upon what principle could he claim to fix the price he should pay for his passage? The conductor's duty was to charge him the price fixed, eighty cents, with the rebate of fifteen. He had no ticket. The conductor was bound to exact the fare fixed for such cases; he could not take less than sixty-five cents without disobedience of his instructions and without a relinquishment of part of the legal fare.

How can the plaintiff base a claim to dictate the fare he should pay, upon his failure to find the ticket office of the defendants open when he wished to purchase a ticket? The defendant was under no legal duty to have their office open at that time, or any other particular time; they had made no contract with the plaintiff to do so. They had offered to carry him, in legal effect, from Olean to Salamanca for sixty-five cents, paid to their conductor, with the privilege to him to purchase a ticket at any of the offices, when open, for sixty cents, for such transportation. They open their offices at their own discretion and for their own convenience and interest, and cannot be compelled to open them or keep them open otherwise, except by act of the legislature.

The courts cannot say when, or for how long a time they shall open such offices each day or otherwise.

If the plaintiff failed for any cause to procure a ticket, he had no right to get into the defendant's cars, except upon the implied engagement on his part to pay the fare fixed for, and required of passengers without tickets.

The case is within the rule and principles asserted in the able opinion of the court, in the case of *Crocker* v. *The New London and Palmer R. R. Co.* (24 Conn., 249).

In that case, as in this, it appeared that the plaintiff went to the defendant's office, where tickets were usually sold, and found it closed, and that he then got into defendant's cars and claimed to ride to the place of his destination for fifty cents, the price of the tickets between the places stated when sold at the ticket-office, but the conductor required him to pay fifty-five cents, the rate of fare when it was paid to the conductor upon the train, which he refused to do, and suffered himself to be expelled from the cars for his refusal to pay such fare. It was held by the court that the defendants were under no legal obligation to furnish tickets or carry a passenger between the place of his starting and of his destination for less than fifty-five cents. That the plaintiff's claim to such passage rested entirely upon the assumed engagement of the defendants to furnish tickets, or to carry passengers for less than fifty-five cents each. That such regulation of the defendant was not a contract creating a legal debt or duty, but a mere proposal which might be withdrawn or suspended at pleasure. That such proposal was withdrawn by closing defendants' office and the retirement of their agent therefrom, and that that proposal being thus withdrawn, the defendants remained liable as common carriers to carry the plaintiff for fifty-five cents only, and that the plaintiff having refused to pay such fare was properly removed from the cars. This case was precisely like the one at bar, and the logic of the decision of the court appears to me to be unanswerable.

The plaintiff, rather than pay the small sum of five cents which was required of him by the conductor of the train in the clear discharge of his duty, preferred to invite and procure his expulsion from the cars, and the loss and inconvenience thereby consequently involved, in order to lay the basis of an action against the defendants in the assertion of a principle of very small consequence to himself.

He has had the luxury of his lawsuit also, and as it not unfrequently happens to such martyrs to principle, he is destined, I fear, to be disappointed in his hope of receiving the martyr's reward.

The judgment should be reversed, with costs.

Present — MULLIN, P. J., SMITH and TALCOTT, JJ.

Judgment reversed.