THE ATCHISON, TOPEKA & SANTA FÉ RAILROAD COMPANY V. WILLIAM HOGUE.

1. RAILROAD COMPANY — *Keeping Ticket Office Open.* Paragraph 1325 of the General Statutes of 1889 imposes the duty upon railroad companies of keeping ticket offices open, with an agent ready upon call to sell tickets, 30 minutes prior to the departure of trains, before conductors are authorized to collect excess fare from passengers who have entered the cars without such tickets.

2. FINDINGS, *not Evasive.* Certain special findings of the jury examined, and found not to be evasive or false.

3. PASSENGER — *Ejection from Train — Excessive Damages.* In an action to recover damages for expulsion from the train for refusing to pay the excess fare demanded, where the plaintiff tendered what he claimed to be and what was in fact the legal fare, and upon the refusal to pay more was ejected from the car by the conductor and brakeman, but without unnecessary force, rudeness, or violence, exemplary damages are not recoverable; and *held,* that the sum of $390, allowed by the jury for indignities suffered, is excessive.

*Error from Lyon District Court.*

ACTION by Hogue against the *Railroad Company,* to recover damages for expulsion from defendant's train. Judgment for plaintiff. The defendant company comes to this court. The opinion states the facts.

*Geo. R. Peck, A. A. Hurd,* and *Robert Dunlap,* for plaintiff in error:

1. The plaintiff is not entitled to recover, because the ticket office was open for the sale of tickets for at least 30 minutes prior to the departure of the train, although the agent was temporarily absent therefrom attending to his duties, since sufficient facilities were afforded at such a small station to reasonably accommodate the public; and also because the plaintiff did not take passage from Walnut station, and no unnecessary force was used in putting him off the train.

The act which justified the charge of the 10 cents excess demanded by the conductor is chapter 139 of the Laws of

1886. What is meant by requiring the railroad company to keep its ticket office open for the sale of tickets at least 30 minutes immediately prior to the starting of the train? The word "immediately," used in § 1 of said act, does not mean the instant before, but a reasonable time before, under all the circumstances. See Am. & Eng. Encyc. of Law, pp. 931–935, note 2. The 30 minutes were intended to precede the departure of the train and not an hour or so prior to the departure. It was fixed as prior to the departure of the train, and the word "immediately" was used in order that those desiring to take passage would know the time within which they might apply for the purchase of a ticket. But the fact that some time during the 30 minutes the agent might be temporarily out of the ticket office and about the station attending to some necessary duty for the accommodation of the public would not take the case out of the spirit of the act. It would be manifestly inconvenient and unreasonable to so construe the law as to maintain that because the agent should temporarily leave his office at any time during the 30 minutes, although for a necessary and laudable purpose, the act was not complied with, or the ticket office not open for the sale of tickets. See Suth. Stat. Constr., § 322; *Everett v. C. R. I. & P. Rld. Co.*, 69 Iowa, 15; Comp. Laws of 1885, ch. 23, § 55.

Under the decision of *A. T. & S. F. Rld. Co. v. Gants*, 38 Kas. 608, there can be no recovery by the plaintiff upon the ground that excessive force was used. From the undisputed evidence, therefore, the plaintiff was not entitled to recover, and the verdict was not sustained by sufficient evidence.

2. Certain of the special findings of the jury are evasive and false.

3. The verdict is excessive. The plaintiff designedly brought upon himself all the injury which he suffered, and it is well said by the Ohio court that "to the willing mind there is no injury." See *C. H. & D. Rld. Co. v. Cole*, 29 Ohio St. 134.

There being no insult offered to the plaintiff, there could be no recovery for alleged indignities. See *Payne v. C. R. I. & P.*

*Rld. Co.*, 45 Iowa, 573; *Fitzgerald v. C. R. I. & P. Rld. Co.*, 50 id. 79; see, also, *Tomlinson v. W. & S. C. Rld. Co.*, 47 Am. & Eng. Rld. Cas. 620; 2 Wood, Rly. Law, 1238; Wood, Mayne, Dam. (1st Am. ed.) 14, note; *L. S. & M. S. Rld. Co. v. Pearce*, 47 Mich. 277.

*John A. Murray*, for defendant in error:

1. The plaintiff had first taken passage from Girard to Walnut; for that distance he had a ticket; when he reached Walnut, the contract of carriage between him and the company had been completed. He got off the train at Walnut for the purpose of procuring a ticket and thus entering into a new contract for passage to Erie. From this state of facts, how can the plaintiff in error maintain that the question as to excess is any different than if the plaintiff had first taken passage from Walnut, or if he had stopped over at Walnut for the space of one day?

The question as to Walnut being a small and insignificant station, and the business of the station not justifying the company to keep more than one agent, cuts no figure in this case.

If words are to be construed "according to the context and approved usage of language," as provided by our statute, then the word "immediately" could receive no such construction as counsel maintain. Webster has defined the word "immediate," in relation to time, "not deferred by an interval of time;" "acting directly;" "immediately — without delay or intervention of anything;" hence, in this case, the intervention of an amply sufficient period from the time when the agent left the ticket office until the time of the departure of the train in which the plaintiff could have procured a ticket precludes the theory adopted by plaintiff in error.

2. A careful perusal of the evidence will exhibit the fact that the jury answered the special questions submitted as best they could, and in fact very candidly and to the point.

In the case of *Everett v. C. R. I. & P. Rld. Co.*, 69 Iowa, 15, the rule of the law construed was altogether different.

In the case of *Payne v. C. R. I. & P. Rld. Co.*, 45 Iowa,

576, cited by the counsel, "the conductor was conscientiously endeavoring to carry out a wholesome rule of the company." In *Fitzgerald v. Railroad Co.*, 50 Iowa, 79, the conductor was "enforcing a valid rule." How different this from the case at bar, where the conductor was willfully and intentionally attempting to enforce a rule of the company in direct violation of the statute.

The case in controversy, it seems to us, is a parallel with the case of *S. K. Rly. Co. v. Rice*, 39 Kas. 398. Resistance would not augment his right to recover; neither would it preclude a recovery. If the plaintiff was not a trespasser upon the train, but was there rightfully, the force used was in any event inexcusable, and the fact that he held on to the seats would not be a justification. *A. T. & S. F. Rld. Co. v. Gants*, 38 Kas. 614, *et seq.*

Opinion by GREEN, C.: William Hogue took passage at Girard on a train operated by the Atchison, Topeka & Santa Fé Railroad Company to go to Walnut. Before reaching the latter place he concluded to go to Erie, 10 miles farther. When the train arrived at Walnut, he got off and went to the ticket office to procure a ticket. The agent was not in the office, but was handling baggage on the platform. Hogue stood at the window of the ticket office until the conductor shouted "All aboard," when he got on the train. According to his own evidence, he went to the ticket office to obtain a ticket to Erie, but finding no agent within he boarded the train without procuring one. After the train had left Walnut, the conductor passed through the train and demanded a ticket, and the passenger handed him 30 cents. The conductor inquired where he was going, and he replied that he was going to Erie. The conductor demanded 10 cents more, and Hogue inquired why he wanted more than the regular fare of 3 cents a mile. The conductor answered because he had not purchased a ticket. Hogue replied that when the train reached Walnut he got off to buy a ticket and the agent was not in; that he waited for him and he did not come; that he could not secure a ticket,

and expressed the opinion that the conductor should not charge him the excess. The passenger declined to pay the excess, and the conductor notified him that he would have to put him off. The train was stopped, and the conductor asked the passenger what he proposed to do, and he answered, "I am here; if you want to put me off, you will have to put me off, for I will not get off." The conductor took hold of the passenger and the latter took hold of the side of the seat and held on. The conductor called the brakeman to his assistance, who picked the passenger up and carried him out on the platform and pushed him off. The passenger grabbed the conductor and they both left the train together and rolled down the bank. The money tendered was found by the brakeman on the car seat and was put in the valise of the plaintiff. The passenger's baggage was taken off of the train, and he walked back to the depot at Walnut. This was an action brought to recover damages for such expulsion. The jury returned a verdict for $400 damages, $10 of which they assessed as actual damages, and $390 they allowed for indignities suffered. The railroad company brings the case here upon three assignments of error.

The first contention of the railroad company is, that the plaintiff was not entitled to recover, because the ticket office was open for the sale of tickets for at least 30 minutes prior to the departure of the train. Although the agent was temporarily absent therefrom attending to his duties, sufficient facilities were afforded at such a small station as to reasonably accommodate the public. It is urged that it would be unreasonable to require of a railroad company that its agents should remain every minute of the 30 minutes prior to the departure of the train in the ticket office, when there was no reasonable expectation that at the last moment somebody would get off of the train for the purpose of buying a ticket to continue his journey. The reading of the statute is so plain that there is little room for construction. The proviso of the law reads: "This act shall not apply to any passengers taking passage on any railroad train (from any station)

at which such railroad company fails to keep tickets on sale, or at which such company shall neglect or fail to keep its ticket office open for the sale of tickets at least 30 minutes immediately prior to the starting of such train." (Paragraph 1325, Gen. Stat. of 1889.) This question has recently been passed upon by this court, adversely to the contention of the plaintiff in error. It was held that if the ticket office of a railroad company was not kept open, with an agent ready upon call to sell tickets long enough before the actual departure of the train, whether delayed or not, to enable passengers to purchase tickets and safely board the train, no excess fare can be collected. The court said:

"It is contended that it will subject the companies to great inconvenience and hardship to require them to keep an agent at his post, not only 30 minutes before the schedule time of departure, but also during the time that trains are unavoidably delayed, as they frequently are. The statute must control; and its terms are so plain that little question can arise as to their meaning. No right to charge excess fare is given unless the company keeps an office open for the sale of tickets immediately prior to the departure of the trains. No mention is made of the schedule time of starting the trains, nor is there anything in the language of the statute indicating that the office should only be kept open 30 minutes prior to the advertised time of the departure. The exception is expressly made to apply to any passenger taking passage on 'any railroad train,' and requires the ticket office to be open 30 minutes before the starting of such train, and not 30 minutes before the advertised time of starting such train. It might be that in the absence of a statute a regulation such as contended for might be deemed a reasonable one, such as the courts would enforce; and that seems to have been the holding of the courts in the cases cited by the plaintiff in error. (Railroad Co. v. South, 43 Ill. 176; Swan v. Railroad Co., 132 Mass. 116.) The legislature, however, has determined what a reasonable regulation is in order to found a right for the charge of excess fare, and we are therefore not called upon to determine what in our opinion would be a reasonable regulation in this respect. (Porter v. N. Y. C. Rld. Co., 34 Barb. 353; Nellis v. N. Y. C. Rld. Co., 30 N. Y. 505; Chase v. N.

*Y. C. Rld. Co.*, 26 id. 523; *A. T. & S. F. Rld. Co. v. Dwelle*, 44 Kas. 394.)

Under the authority of the case cited, the court did not err in refusing the instructions requested by the defendant below, or in giving the instructions of which complaint is made.

It is urged that some of the special findings of the jury are evasive and untrue. We have read the evidence in the record and we cannot see wherein the jury evaded answering the special questions, or that there is not evidence to support such special findings.

The last reason assigned for a reversal of the judgment is that the verdict is excessive. The jury found that the plaintiff suffered $10 actual damages. No allowance was made to the plaintiff for personal injuries. The sum of $5 was allowed for loss of time. In answer to the last special finding of fact, the jury said they allowed $390 for indignities suffered. The rule insisted upon by the plaintiff in error is this: "That if a conductor of a railroad train mistakenly enforces a valid rule of the company, and without malice or wantonness applies it to an individual where the rule is not applicable, honestly supposing that he is in the discharge of his duty, there is no ground for allowing damages compensatory of indignity and insult." Obviously this case comes within the rule, which is amply supported by authorities. The matter of the lawfulness of the fare from Walnut to Erie could have been settled as well without a forcible expulsion as with it. Indeed, it could have been settled without any expulsion. The plaintiff could have paid the 10 cents excess demanded and brought his action. He invited and anticipated the expulsion. He said to the conductor: "I am here; if you want me off you will have to put me off, for I will not get off." He could have prevented the expulsion by paying the excess demanded; and it was clearly his duty to avoid that which he was bound to expect if he persisted in refusing to comply with the request of the conductor. The evidence tended to show that the plaintiff had

brought himself within the rule that where a conductor, in enforcing a valid regulation of the company, in good faith and without unnecessary force, ejects a passenger from a train, the corporation is not liable for indignities suffered or exemplary damages.

(*A. T. & S. F. Rld. Co. v. Gants,* 38 Kas. 608; *A. T. & S. F. Rld. Co. v. Long,* 46 id. 260; *Payne v. C. R. I. & P. Rld. Co.,* 45 Iowa, 569; *Fitzgerald v. C. R. I. & P. Rld. Co.,* 50 id. 78; *C. H. & D. Rld. Co. v. Cole,* 29 Ohio St. 126; *Tomlinson v. W. & S. C. Rld. Co.,* 47 Am. & Eng. Rld. Cas. 620; 2 Wood, Rld. Law, § 317.)

We are of the opinion that the verdict of the jury is excessive as to the $390 allowed by the jury for indignities suffered. The defendant in error, in his cross petition, insists that the district court should have submitted the question of exemplary damages to the jury. The court below said to the jury that under the evidence in this case they could not allow exemplary damages. This we think was correct. The observations we have already made render it unnecessary for us to say anything more upon this branch of the case.

It is recommended that the judgment of the district court be modified by striking out the $390 awarded for indignities suffered, and affirmed as to the rest; that if this modification of the judgment be not accepted by the plaintiff below, a new trial will be granted, with costs, but if the modification, as stated, be accepted, the costs of this court will be divided.

By the Court: It is so ordered.

VALENTINE and JOHNSTON, JJ., concurring.

HORTON, C. J.: I agree that the verdict of the jury is excessive, and that the judgment for $390 for alleged indignities ought not to stand. There is an instruction of the trial court which seems to me to have been misleading. Whether prejudicial or not in this case, it is somewhat difficult to determine. The instruction, however, ought not to have been given. It reads as follows:

"If a passenger riding on a ticket to any station desires,

for any reason, to extend his journey beyond such station, he is under no obligation to leave the train and buy a ticket for such extended journey, if the usual time of stoppage at such station is too short to give a reasonable opportunity to make such purchase and return to the train."

It appears that Hogue took passage upon the railroad train at Girard for Walnut, and purchased his ticket for that station. Before arriving at Walnut, he changed his mind and concluded to go on to Erie, 10 miles further. If the train, under the rules and regulations of the company, did not stop long enough to permit him to get off and purchase a ticket and then get on again, it would be necessary for him to pay the excess of fare demanded to continue his trip to Erie. If a passenger, having purchased his ticket for a particular station, desires, after his trip is commenced, to extend his journey beyond such station, he will, under the law, be required to pay the excess, unless he leaves the train at a station where it stops long enough for him to purcase a ticket and return to the train; provided, of course, a ticket office is open, as prescribed by the statute. But a railroad company is not required to delay its train and discommode its other passengers merely to permit a passenger to get off at a station and purchase a new ticket, because he is desirous of extending his trip beyond the station for which he holds a ticket. The law is just the contrary to the instruction of the trial court, if it was intended thereby to inform the jury that a passenger can extend his trip, under the circumstances therein stated, without paying the excess of fare.