### Illinois Central Railroad Company v. John Bauer.

1. PASSENGERS—*Entering Train Without Tickets.*—It is the duty of a passenger to apply for his ticket before the expiration of the time at which the train is to start, as shown by the time table; if he applies after that time and before the train has actually started, and the office has closed or the agent is engaged in other business, then the person so applying, if he takes passage without a ticket, is subject to all the reasonable rules of the railroad company requiring him to pay a higher rate of fare than he would have had to pay if he had procured a ticket, and on refusal to pay such higher fare he may be ejected from the train.

2. SAME—*Offering to Pay the Extra Fare After the Train is Stopped to Expel Him.*—A passenger who enters a railroad train without a ticket and refuses to pay the higher fare required in such cases by the rules of the company may be ejected from the train. And it will not avail him if, after the train is stopped for the purpose of ejecting him, he offers to pay the extra fare or put the company in the wrong for expelling him.

Trespass, for ejecting a person from the train. Appeal from the Circuit Court of Kankakee County; the Hon. CHARLES R. STARR, Judge, presiding. Heard in this court at the December term, 1895. Reversed but not remanded. Opinion filed June 1, 1896.

WHEELER & HUNTER, attorneys for appellant.

Stephen R. Moore, attorney for appellee.

Mr. Justice Lacey delivered the opinion of the Court.

This is a suit by appellee for damages for being expelled from the appellant's railroad train by the conductor, T. J. Brinkman, at the village of Chebanse. There was a trial by jury and verdict for appellee for $50 and judgment on the verdict.

The facts in many essential points are undisputed, though in some there is a conflict of the evidence.

On the 4th day of June, 1895, the appellee had occasion to go on appellant's train from Chebanse, where he resided, to Kankakee, a distance of eight and one-fifth miles, and was desirous of going on the 4:33 p. m. train. This was the time of its arrival as published and known to appellee.

He went to the depot about fifteen minutes, as he himself testified, before train time, and while the ticket office was open. From that time up to the time the train was due appellee failed to procure a ticket, through his own fault and not through any fault of the station agent. The train was some ten minutes late and when it whistled the station agent was obliged to be engaged in other duties. It arrived at 4:42 o'clock and departed at 4:43 o'clock.

Just as the station agent, Frank W. Duggan, was pulling down the semaphore to let the train in, appellee asked for a ticket, but the agent being engaged, could not give it to him, and so appellee boarded the train without a ticket.

As the train started the conductor demanded appellee's ticket, but he had none, and offered to pay his fare, twenty-five cents, but the conductor demanded thirty-five cents, which appellee refused to pay. The conductor then pulled the bell rope for the purpose of stopping the train and putting the appellee off the train and stopped it, and put his hands on his shoulders and led him to the door of the car and ordered him off. The appellee obeyed and got off the train within about three hundred feet of the depot. As to what happened between appellee and the conductor at the time of this occurrence there is a conflict in the evidence.

The appellee says after the bell-rope was pulled and he saw the conductor was about to put him off the train he offered to pay the thirty-five cents demanded, but the conductor refused on the ground that as he had refused once he would not then take it.

The conductor and other witnesses contradict this and say that appellee at no time offered to pay the thirty-five cent fare.

The rules of the company, as shown by its printed rules and the evidence of the conductor, are that " passengers are not permitted on the cars of the company without a ticket," and that " conductors are required to collect from all passengers who have not tickets a higher rate than they would be charged if they had tickets before entering the train."

The conductor testified, and it was not contradicted, that " the fare on the day that Bauer attempted to come to Kankakee from Chebanse, was, for passengers having tickets, twenty-five cents, for passengers without tickets, thirty-five cents."

Admitting that the jury found the facts most favorable for appellee, has he any right of recovery ?

We are of the opinion he has not. The fault in not procuring a ticket was that of appellee. It was his duty to apply for his ticket to the station agent before the expiration of the time at which the train should start as fixed by the time table.

In law, if the passenger apply at the ticket office after that time and before the train has actually started, and the office has closed or the agent is engaged in other business, then the person so applying, if he take passage without a ticket, is subject to all the reasonable rules of the railway company requiring such person to pay a higher rate of fare on the train than they would have had to pay, if they had procured a ticket. St. L., A. & T. H. R. R. Co. v. South, 43 Ill. 176; and a passenger on a train under such circumstances without a ticket, on refusal to pay such extra fare may be ejected from the train. C., R. I. & P. Ry. Co. v. Baisbone, 24 Ill. App. 463.

It appears, then, that the appellee was liable under the law and undisputed facts of the case to be charged with the extra ten cents fare, and liable to be ejected from the cars in case he refused to pay it. Now, admitting his theory of the case, his offer, after first refusing to pay the fare after the conductor had proceeded to stop the train and eject him, was it a sufficient tender of the fare to put the appellant in the wrong in expelling him from the train?

It would be unreasonable to allow a passenger to trifle with a conductor of a railroad train in that manner.

He was in the wrong and liable to pay the increased railroad fare and should not be allowed to trifle with the agent of the company, demoralize the passenger traffic, and incommode the public. O'Brien v. N. Y. C. & H. R. R. Co., 80 N. Y. 236.

Several instructions given for appellee were erroneous, but we need not notice them as we have considered the case on the facts. There seems, from the evidence, to have been no injury or indignity inflicted on appellee by the conductor, except the humiliation of having been put off the train, and this he brought on himself by his own negligent and unjustifiable act. There was no error in the ruling of the Circuit Court on admission of evidence.

There appears, in our judgment, no cause of action on the facts of this case.

The judgment of the court below is reversed and the cause not remanded.