# The St. Louis, Alton and Terre Haute Railroad Company

## v.

## Thornton Y. South.

1. FORMER DECISION. The cases of the *Chicago, B. & Q. R. R. Co.* v. *Parks*, 18 Ill. 460, and *The St. Louis, Alton & Chicago R. R. Co.* v. *Dalby*, 19 id. 353, are not to be considered as deciding the law to be, that a railroad company is bound to keep open its office for the sale of tickets to passengers *beyond* the time fixed by its published rules for the departure of a train.

2. RAILROAD COMPANIES — *not required to keep open their ticket-office beyond the time fixed for the departure of trains.* Railroad companies are required to keep open their office for the sale of tickets to passengers for a reasonable time before the departure of each train, and up to the time fixed by its published rules for its departure, and *not* up to the time of *actual* departure.

3. SAME. They are required to furnish a convenient and accessible place for the sale of tickets, and afford the public a reasonable opportunity to purchase them, and parties who will not avail themselves of it are alone at fault, and must pay the extra fare, or, on refusal, be ejected from the train.

4. SAME — *of right to charge discriminating fares — dependent on what fact.* While the right of a railroad company to discriminate in its fare, between those purchasing tickets and those who do not, is just and reasonable, still such right depends on the fact that a reasonable opportunity has been given to obtain tickets at the lowest rate

5. SECURITY FOR COSTS — *motion for — when made too late.* After issue joined, and the cause has been called for trial, a motion for a rule on the plaintiff to file security for costs, comes too late.

6. TRESPASS — *where several defendants, damages cannot be assessed severally against them.* In an action of trespass against several defendants, the jury cannot assess damages severally against them.

7. INSTRUCTIONS. And in each case, if the court so instruct the jury, it is erroneous, but such error is cured by the entry of *nolle prosequi* before judgment upon the verdict, against all the defendants but one, and taking judgment against him alone.

APPEAL from the Circuit Court of Coles county; the Hon. OLIVER L. DAVIS, Judge, presiding.

This was an action of trespass, brought by the appellee in the Circuit Court of Coles county, against the appellants, Frederick Austin, Charles Rhodes, Lorenzo Lee and Edward Dawson. The cause was tried before a jury at the April Term, 1866, of said court, and a verdict of guilty rendered against the defendants, and damages assessed severally against them. Whereupon, a *nolle prosequi* was entered as to all the defendants except appellant, and judgment was entered against it for $300. Motions for a new trial and in arrest of judgment were made, which the court severally overruled, and thereupon an appeal was taken to this court.

The facts necessary to an understanding of the questions presented to this court for its decision, are stated in the opinion.

Messrs. WILEY & PARKER, for the appellants.

Mr. JOHN SCHOLFIELD, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

The principal questions in this cause arise upon the instructions given on behalf of the plaintiff, and on those refused as asked by the defendants, the appellants here, and on the measure and amount of damages, the former of which we will notice.

The first instruction asked by the plaintiff, and given, was this:

"It was the duty of the St. Louis, Alton and Terre Haute Railroad Company to furnish a convenient and accessible place for the sale of tickets for passengers, with a competent person in attendance ready to sell them, which should be open and accessible to all passengers for a reasonable time before the departure of each train, and up to the time of its actual departure; and if the jury believe from the evidence that the plaintiff, by and through Allison, made application at the ticket-office of the St. Louis, Alton and Terre Haute Railroad Company, at Mattoon, for a ticket from that place to Charleston, at any time within ten or fifteen minutes before the actual departure of its train, and he was unable to get a ticket in consequence of the ticket-office being closed, then the St. Louis, Alton and Terre Haute Railroad Company had no right to charge him upon the train any more than usual ticket price between Mattoon and Charleston."

The first instruction asked on behalf of the defendants and refused, was as follows:

"That if they find from the evidence that the defendant, St. Louis, Alton and Terre Haute Railroad Company, has a convenient and accessible office, supplied with and for the sale of tickets in Mattoon; that on the evening of the alleged trespass the same was open, with a competent person in attendance to sell tickets for an hour before and up to the expiration of the time fixed by public notice for the departure of the train on which plaintiff took passage; that the plaintiff got upon said train to travel from Mattoon to Charleston without procuring a ticket and refused to pay, or cause to be paid, to the conductor of said train the amount of fare or passage money required by the regular tariff of said company for passengers who fail to produce tickets, and that by reason of such failure of plaintiff to pay or cause to be paid such fare or passage money he was expelled from the cars of said company by the servants or employees of said company at a regular station on said railroad, then in that case the jury must find the defendants not guilty."

The point of difference is obvious. While the instruction for the plaintiff requires the ticket-office to be kept open up to the time " of the actual departure of the train," that for the defendant limits that duty " to the expiration of the time fixed by public notice " for the departure of the train.

It is insisted by the appellee, that the law is as declared in the instruction given in his behalf, and has been so held by this court in the case of the *Chicago, Burlington and Quincy Railroad Company* v. *Parks*, 18 Ill. 460, and reiterated in *St. Louis, Alton and Chicago Railroad Company* v. *Dalby*, 19 id. 364, and that the instruction is an exact transcript of the language of this court, in the cases cited.

In this the counsel is not mistaken. In the case first cited, this court said : " To justify a railroad company in making a discrimination in the fare against the passenger who neglects to purchase a ticket at the company's office, the company must see to it that the fault was not that of its own agent instead of the passenger. To justify this discrimination, every reasonable and proper facility must be afforded to the passenger to procure his ticket. They must furnish a convenient and accessible place for the sale of the tickets, with a competent person in attendance ready to sell them, which should be open and accessible to all passengers for a reasonable time before the departure of each train and up to the time of its actual departure, so that it shall really be a case of neglect and not of necessity on the part of the passenger, and not the fault of the company." Further on, in the next paragraph but one, the court call these remarks " suggestions," and give the reason why they were made, the point to which they apply not being in the case before them. The controversy there was this : Parks, an attorney-at-law, residing at Aurora, in Kane county, took the train there, without purchasing a ticket, for Batavia, the nearest point to Genoa, where the court was held, and which Parks was going to attend. He paid the extra fare required of those who pay on the car from Aurora to Batavia. At the latter place he changed his mind, and, as it was wet, disagreeable weather, he concluded, without purchasing a ticket, to proceed

on to Junction, another station on the road.    The ticket-fare from Batavia to Junction was twenty cents, which Parks offered to pay to the conductor, but he refused it, demanding, under his instructions, an additional five cents, which Parks refusing to pay, the conductor put him off the train.    This was the case in which the "suggestions" above quoted were made.    The court, and the learned judge, afterward so long the honored chief justice of the court, who delivered the opinion, were well aware of the fact that the time of the arrival and departure of railroad trains was fixed, and made notorious by publication and notice in every conceivable mode, so that it may be safely asserted, the business and traveling public, all those whose pursuits required that mode of conveyance, and especially those living in the towns through which railroads pass, were perfectly familiar with the fact, and almost any inhabitant, if inquired of, could tell to a minute when any particular train was due at their town, and when it would leave.

In speaking, then, of the time of the actual departure of a train, up to which the ticket-office must be kept open, the court, unquestionably, meant to be understood as referring to the published fixed time which every body knew.    The presumption being that trains will arrive and depart on their schedule time, which time is notorious, no rule should be established that should apply, without much hardship and great inconvenience, to the departure of trains not on time.    We do not recognize any right in any person to apply at a railroad ticket-office after the time fixed and published for the departure of a train, and demand the same rights and privileges accorded to those who come at the proper time for their tickets    It is well known that trains are sometimes delayed for hours, and that it is unavoidable.    Would it not be going too far to require the companies controlling them to keep an agent at his post during all this delayed time?    Tickets are not usually applied for by passengers after the time fixed for the departure of a train.    The companies have a right to presume they will not be applied for after that time, and therefore their agents can close the ticket-office and go about their other business, of

which they have an abundance, if we are to judge from the number of trains upon our railroads. An agent at a railroad station who sells tickets is, not only "ticket agent," but he is the "station agent," and has much to do with freight and other matters requiring care and attention. It would be unreasonable to require him to neglect these matters, and confine him within reach of the small opening at which the tickets are delivered, waiting for a delayed train, and not a passenger applying for a ticket. It is sufficient for the company that a reasonable opportunity should be afforded passengers to procure tickets for the train he designs to go upon, and that reasonable opportunity is furnished by keeping a convenient office open under the charge of a competent agent, up to the advertised time fixed for the departure of the train. The facts in this case show that the ticket-office was open an hour before the train left, and continued open up to the time fixed for its departure. The plaintiff, coming after that time, took his chances to get a seat in the car, and, having no ticket, he was bound to pay car fare.

We are of opinion the court should have refused the first instruction for the plaintiff, and given the first asked by defendants, the company not being obliged to keep the ticket-office open beyond the hour fixed by its published rules for the departure of a train.

These being the views we entertain of the law of this case, the modification of the defendant's eighth instruction was also erroneous, as by that the office is required to be kept open up to the time of the actual departure of the train.

All that can be demanded of a railroad company is, that a reasonable opportunity shall be afforded the public to purchase tickets. If parties will not avail of it, it is their own fault, and if they get upon a train without a ticket, they must be subject to pay the car fare, or, on refusal, to be ejected from the car. In Parks' case, this court said the right to charge discriminating fares was just and reasonable, but it depends on the fact that a reasonable opportunity has been given to obtain tickets at the lowest rate of fare. This opportunity was afforded the appellee.

A minor point as to the ruling of the court on the motion and affidavit of defendant's counsel to rule the plaintiff to give security for costs on the ground of his insolvency, has been raised. The bill of exceptions shows this motion was made, and the affidavit is incorporated into it.

This motion was denied by the court.

The statute provides, " if in any case the court shall be satisfied that any plaintiff is unable to pay the costs of suit, or that he is so unsettled as to endanger the officers of the court with respect to their legal demands, it shall be the duty of the court, on motion of the defendant or any officer of the court, to rule the plaintiff, on or before a day named, to give security for the payment of costs in such suit." Scates' Comp. 244.

The affidavit states that affiant had just learned that the plaintiff was insolvent, and at the time the motion was made the record shows issue had been joined and the cause had been called for trial. This court said, in *Selby* v. *Hutchinson*, 4 Gilm. 319, " that this motion was addressed to the discretion of the court, and the decision upon it could not be assigned for error." We think the motion was too late.

Another objection is made by appellant to the instruction to the jury, that they could assess damages severally against the defendants. The instruction was erroneous, but the error was cured by the entry of a *nolle prosequi* before judgment upon the verdict against Austin and Lee, and taking judgment against the company alone. 1 Tidd's Pr. 682. We cannot see that this instruction, wrong as it was, prejudiced the appellant in any way.

The judgment of the Circuit Court is reversed and the cause remanded, with directions to award a *venire de novo*.

*Judgment reversed.*