83   511
94   577
83   511
f102  305

CASE 71—PETITION ORDINARY—JANUARY 12.

## Wilsey v. L. & N. R. R. Co.

APPEAL FROM ROCKCASTLE CIRCUIT COURT.

1. RAILROADS—REASONABLE REGULATIONS.—A regulation of a railroad company, whereby passengers who pay their fare upon the train are required to pay a higher rate than those who purchase. tickets before entering the cars, is reasonable, and the company will be protected in its enforcement.

2. RIGHT TO EJECT PASSENGER FROM TRAIN.—Where the conductor of a train demands of a passenger a higher rate of fare than he is entitled under the rules of the company to demand, the demand is illegal. and the company is responsible if the conductor ejects. the passenger for his refusal to comply.

3. "STOP-OVER" PRIVILEGE.—As a general rule, when a passenger who holds a ticket from one point to another selects his train and

enters upon his journey, he has no right to leave the train at a way station, and afterwards enter another, and proceed to his destination without procuring a ticket or paying his fare from the way station. If, however, the company is not prosecuting the journey in a reasonable time and in a reasonable manner, as the passenger has the right to demand that it shall do, then he may leave the train which he selected, and continue his journey upon another under the original contract, and without paying an additional fare.

4. CASE ADJUDGED.—Appellant, having purchased a ticket, was a passenger upon a train which, about dark, was stopped upon the road by a wreck ahead of it. Being informed by the train officials that the train would be delayed several hours, perhaps all night, and that they could not tell when the train would be ready to proceed, appellant, who was sick, informed the conductor of the fact, and asked for a stop-over ticket, which was denied him. Appellant then left the train, and spent the night at the hotel, and took another train next day. The conductor upon this train refused to accept the conductor's check, which appellant had received in lieu of his ticket the day before, and also refused to accept ticket fare which appellant offered to pay, and demanded as conductor's fare more than he was entitled under the rules of the company to demand. Appellant refusing to comply with this demand, the conductor ejected him from the train. *Held*—That under the circumstances appellant had the right, under his original contract, to stop over and take another train without paying additional fare. Moreover, the conductor's demand, being for more than he was entitled, in any event, to demand, was illegal, and appellant's refusal to comply gave the company no right to put him off the train.

5. PEREMPTORY INSTRUCTION.—While it is usual for the defendant, in moving for a peremptory instruction, to do so upon the plaintiff's evidence alone, yet the court may, after all the evidence has been heard on both sides, direct the jury to find for the defendant if *all* of the evidence is in his favor.

6. THE BURDEN OF PROOF in this case was on the plaintiff, the petition and answer putting in issue whether the plaintiff voluntarily left the train, and what was the full and established rate of fare.

W. O. BRADLEY AND F. H. REPPERT FOR APPELLANT.

1. After all the evidence on both sides had been heard, it was too late to ask a peremptory instruction. (Hurt v. Miller, 3 A. K. Mar., 337; Dallam v. Handly, 2 A. K. Mar., 423; Woods v. McCombs' Adm'r, 5 Ky. Law Rep., 694.)

2. A railroad company is liable for detention caused by negligence. It was, therefore, error to strike out that part of the petition which

Wilsey v. L. & N. R. R. Co.

charged that the wreck was caused by defendant's negligence. (Hutchinson on Carriers, section 608; Quamley v. Vanderbilt, 17 N. Y., 306; Williams v. Same, 28 N. Y., 217; Vanbuskirk v. Roberts, 31 N. Y., 661; Cobb v. Howard, 3 Blatch., 524; Hamlin v. The Railway, 1 H. & N., 408.)

3. Even if the plaintiff's ticket would *ordinarily* have entitled him only to a *continuous* ride, yet the defendant having failed to prosecute the journey with reasonable speed, plaintiff had the right to stop over and wait for another train. (Hutchinson on Carriers, sections 568 and 603.)

4. There being no condition attached to the ticket which plaintiff purchased, he had the absolute right to stop over.

5. The defendant had no right, in any event, to charge plaintiff more than conductor's rates. It could not enforce against the plaintiff a regulation which had been a dead letter as to others. (Am. Law Reg., July, 1884, page 417.)

6. The conductor demanded even more than conductor's rates, and having demanded more than he was entitled to, he had no right to put off the plaintiff for failing to comply.

WM. LINDSAY for appellee.

1. The plaintiff, knowing what the consequences would be, deliberately violated regulations of the company, which it is well settled the company had the right to make. He is, therefore, not entitled to recover.

2. While it is unusual to instruct peremptorily after the evidence has been heard on both sides, yet as the plaintiff wholly failed to make out his case, be was not prejudiced by the peremptory instruction.

BURDETT & BROWN and HILL & ALCORN on same side.

1. As there was nothing on the face of the ticket that entitled the holder to any stop-over privilege, the ticket conferred no such privilege. (Hatton v. R. R. Co., 13 Am. & Eng. Railroad Cases, page 53; R. R. Co. v. Bartram, 11 Ohio St., 457.)

2. The company has the right to charge a higher rate of fare where the passenger has not procured a ticket, and to expel from the train a passenger who refuses to pay such extra rate. (Skillman v. R. R. Co, 13 Am. & Eng. Railroad Cases, page 31; R. R. Co. v. South. 43 Ill., 176; Stephen v. Smith. 29 Vt.. 160; R. R. Co. v. Rogers, 38 Ind., 116; Hilliard v. Gould, 34 N. H., 230; R. R. Co. v. Guinan, 11 Tenn., 98; Steele v. Chovin, 7 Iowa, 204.)

3. The peremptory instruction was proper. (Hilliard on Torts, 125; L. & P. Canal Co. v. Murphy's Adm'r, 9 Bush, 533.)

vol. 83.—33

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

This action is for an alleged trespass, committed upon the appellant, Wilsey, by a conductor of the appellee in ejecting him from its train, upon which he was a passenger. It appears that on October 25, 1883, he purchased at full rate a ticket without any condition or limitation upon its face, or any coupon attached to it, over the appellee's road from Dan-ville Junction to London; and upon the same day he took passage upon it, the train arriving at Mt. Vernon between six and seven o'clock in the even-ing, where it was detained by a wreck upon appel-lee's road between that place and London until four o'clock the next morning, when it proceeded upon its trip. When it stopped at Mt. Vernon, the appel-lant was told the cause of it by the train officers, and upon inquiry of them, he was informed that it was uncertain how long the train would be de-tained, but at least for several hours. He was sick, and so informed them. The conductor having already taken up his ticket, and given him a check in lieu of it, he applied to him for a stop-over ticket, in order that he might leave the train and lodge for the night at a hotel. The conductor in-formed him that he could not give it, and he was also informed, either by the same officer or the bag-gage-master, that he could not travel upon any other train upon the conductor's check. He, however, went to a hotel for the night, and, so far as the record shows, had no knowledge of the time when the train proceeded on its trip. The next morning he boarded another passenger train for London, and.

when it had gone about two or three miles the con-
ductor called for his ticket, and as he did so, he
took from the appellant's hat the conductor's check
that had been given him upon the other train, and
tore it up, after being informed that the appellant
had paid his fare from the Junction to London, but
before the latter had time to offer any explanation.

When he did so, however, that officer required
him to pay his fare from Mt. Vernon to London,
and upon his refusal to do so prepared to eject him
from the train. He then said that he would pay it,
and inquired the rate of ticket fare and conductor's
fare, and was told by that officer that the first was
eighty-five cents and the latter one dollar and five
cents, as the conductor testifies, and which sum was,
in fact, the conductor's true rate of fare under the
rules of the company; but the appellant, as well as
a witness introduced by the company, says that he
said it was one dollar and fifteen cents. The appel-
lant thereupon handed him eighty-five cents, and
after counting it, he demanded, as he says, twenty
cents more, while the other witnesses testify, and
the appellee's answer admits, that it was thirty
cents. The appellant refused to pay the fare de-
manded, and the conductor then returned him the
eighty-five cents and ejected him from the train.

The judgment appealed from is one of non-suit,
it having been ordered by the court after both
parties had offered their testimony. The action
was in tort for damages. The averments of the
petition and answer at least put in issue whether
the appellant voluntarily left the train, and what,

was the full and established rate of fare. The lower court, therefore, improperly held that the burden was upon the appellee; and it therefore offered its testimony first. The appellant then introduced his evidence, and the motion for a non-suit was then made. This was a somewhat novel practice. Usually the defendant moves for a peremptory instruction upon the plaintiff's evidence alone; or he may mingle record or undisputed written evidence with it, and then do so; and we in fact see no reason why, when all of the evidence has been heard, the court may not direct the jury to find for the defendant, if *all* of it be in his favor.

Only a question of law is then presented. After the introduction of contradictory evidence, however, the jury have a right to weigh it, and the cause can not be withdrawn from them by a demurrer to the evidence.

The testimony was conflicting in this case as to the amount of fare demanded of the appellant by the conductor. If he demanded more than the usual rate and that fixed by the company, then it was an illegal demand with which the appellant was not bound to comply, and the appellee had no right by reason of the refusal to eject him from the train. But in front of this is a legal question of more importance. A railroad company has an undoubted right to prescribe such regulations as are suitable to enable it to execute its important duties.

The exercise of this power is necessary in order that it may both provide for the safety and comfort of its passengers and protect itself from impo-

sition.  Reasonable regulations looking to these ends should be upheld, because the security of the traveling public and the interest of the railroad so require.  For instance, a higher rate may be collected of passengers who pay their fare upon the train than of those who purchase tickets before entering the cars.  This discrimination is allowed, because it tends to convenience in the transaction of the business, and to the proper accountability of the company's agents.  But it must be general or uniform as to the public, and be carried out in good faith by the railroad corporation, accompanied with a reasonable opportunity for those who desire to do so to purchase tickets before entering the cars.  If they do not avail themselves of the privilege, then they are at fault and must pay conductor's fare. Such a rule affords proper checks upon the accounting officers of the railroad, and protects it in a reasonable manner against possible fraud and dishonesty.  (Hilliard v. Goold, 34 N. H., 230; Stephen v. Smith, &c., 29 Vt., 160; State v. Chovin, 7 Iowa, 204; Railroad Co. v. South, 43 Ill., 176.)

It is also well settled, that when a passenger who holds a ticket from one point to another, selects his train, and enters upon his journey, that he has no right in law to leave it at a way station, and afterward enter another train of the company, and proceed to his destination without procuring a ticket, or paying his fare from the way station.  His ticket is the symbol of the contract between him and the company, the relative duties of the parties under it being for the most part implied.  The contract, however, is an entirety and indivisible.

By it the company undertakes to carry the holder between the places indicated by the ticket as one entire service for the whole distance and not by broken journeys. He is bound by his ticket contract to proceed directly to his destination when he has once made his election as to the time and means of going, and has called upon the carrier for performance, and the parties have mutually entered upon the performance of the contract. If the company sees fit to give him a lay-over ticket, it is as a mere accommodation, and not by reason of any legal obligation. If, therefore, he leaves the train upon which he starts, he commits a breach of the contract and ends it; and when he starts upon another train he begins a new journey, and must check his baggage anew. The reasons for this regulation are obvious.

Any other rule would necessarily impose upon the carrier duties not embraced by a reasonable interpretation of the contract. The payment of the fare entitles the passenger to have his ordinary baggage carried and checked to his distination. If he, by law, can stop at intermediate points at his pleasure, he may demand his baggage at each place, or if it goes on he will not be at his journey's end to receive it. Thus additional attention will be required upon the part of the company, an increased risk of accident created, and delays occasioned not within the fair scope of the contract. (Railroad Co. v. Bartram, 11 Ohio St. Rep., 457; 2 Rorer on Railroads, page 971, *et seq.*)

But, upon the other hand, the company owes

duties to the passenger. By the contract, it undertakes to make the transit covered by the ticket within a reasonable time; and it is only when it is doing so in a reasonable manner that the passenger has no right to leave the train, and take passage upon another under the original contract. To hold that he cannot under any circumstances whatever make a re-election of trains would give to the carrier an unfair advantage in the performance of the contract, and would be an unjust discrimination against the public. Reason dictates that for *good cause* a passenger may leave a train, and have his baggage delivered and embark upon another. The peculiar circumstances of this case say so. Here is a sick passenger upon a train, which about dark is stopped upon the road by a wreck ahead of it, and upon its own road. It matters not whether the wreck resulted from the company's neglect or not. It exists, and impedes the further passage of the train, and prevents the company from complying with the contract as it has undertaken to do within a reasonable time and in a reasonable manner. The passenger is informed by the train officials that the delay will last several hours; perhaps all night; that they can not tell when it will go on, and they fix no time when he must be present and ready to proceed. Is he in such a case required to remain upon the train all night or for an unknown time? We think not. Suppose the particular train upon which he has embarked was by some accident disabled from proceeding at all; would he not be entitled to take a later one, and proceed to his destination without

the payment of additional fare? The delay in question could not be considered an ordinary one, and that hence the passenger must submit to it. The appellee was not bound to wait all night in the train, or from seven o'clock in the evening until four o'clock the next morning for the train to proceed. The company itself having first failed in the performance of the contract within a reasonable time, reason, a fair interpretation of the contract, as well as public policy, require a different rule in such cases from the general one. It is perhaps impossible to lay down one which will apply to all cases, as each one must necessarily depend upon its own peculiar circumstances; but if from accident or misfortune or other cause, and without the passenger's fault, his transit be interrupted, and it be more than an ordinary delay, then he may resume his journey afterward upon a different train, and without the repayment of fare.

In the case of Dietrich v. Penn. Railroad Co., 71 Penn. St. Rep., 432, the circumstances of the case did not authorize the court to so hold in behalf of the plaintiff; but the court, in delivering the opinion, said:

"In adopting the language of the learned Chief Justice of New Jersey, we should not omit to guard our meaning by saying there may be exceptions where, from misfortune or accident, without his fault, the transit of a passenger is interrupted, and where he may resume his journey afterwards."

For the additional reason that the ruling of the lower court did not conform to this view of the law, the judgment below is reversed, and cause remanded for further proceedings in conformity to this opinion.