Gulf, Colorado and Santa Fe Railway Company v. H. L. Dyer.

Decided May 2, 1906.

**1.—Passenger Carrier—Fare—Ticket—Keeping Office Open.**

Testimony in regard to temporary absence of ticket seller of railway from office held to show that same was not kept open for half an hour before departure of train.

**2.—Same.**

The right of a railway to charge a passenger who has no ticket four cents per mile is conditioned by the proviso to the statute (Rev. Stats., art. 4542) upon its ticket office being kept open for half an hour before the departure of the train, irrespective of whether the passenger applied to purchase a ticket and was prevented from doing so by such failure.

**3.—Same—Damages—Ejection of Passenger.**

A passenger entitled to be carried on a train for three cents per mile and offering to pay that fare, is not bound to pay four cents when demanded in order to reduce the resulting damages, but may, without violence, stand on his rights, suffer ejection, and recover the damages resulting therefrom.

**4.—Same—Tender of Fare.**

Tender of the three cent per mile fare is not necessary where the four cent rate was demanded and nothing less would have been accepted.

**5.—Charge—Omission.**

Defendant can not complain of a charge to find in his favor upon the hypothesis which it stated, though such charge would have been justified on one more favorable to him.

**6.—Expulsion from Train—Damages.**

A verdict for $300 held not excessive damages for wrongful expulsion of a passenger from a train.

**7.—Jury—Misconduct—Requesting Instructions.**

Questions asked by the jury as to the effect of a judgment for less than the amount sued for upon the costs of the case, held not to show misconduct or improper motive.

Appeal from the District Court of Brown County. Tried below before Hon. Jno. W. Goodwin.

The jury during their deliberations returned to ask the court whether, if they found a verdict for less than $3,000, the amount claimed in plaintiff's petition, defendant would then have all the costs to pay. The court instructed them that they had nothing to do with the question of costs. They returned a verdict for $900 and costs. Defendant moved for a new trial on the ground that the question, the reply and the verdict showed that they were not making an honest effort to determine the extent of the damages.

*G. N. Harrison, J. W. Terry* and *Chas. K. Lee,* for appellant.—The law does not contemplate that the carrier shall be deprived of the protection of the statute where a reasonable opportunity is given to purchase a ticket, but the passenger does not get a ticket because he loiters and delays and then happens to have gone to the ticket window at the very instant the agent is called away for a moment to discharge some other duty. 26 Am. & Eng. Enc. Law, 646; Robinson v. Varnell, 16 Texas, 386-389; State v. DeGress, 53 Texas, 398; McLelland v. Shaw, 15 Texas, 320; Fordyce, Rec. v. Manuel, 82 Texas, 527.

The law does not require that a ticket agent shall be at the ticket window every minute and every second in order to entitle the carrier to charge the four-cent rate. It is sufficient that agent be there at such time and under such circumstances as that an intending passenger exercising reasonable diligence could secure a ticket. Same authorities.

The court's charge eliminates any question of any obligation on the part of the passenger to use reasonable efforts to get a ticket before he got on the train, and places the plaintiff's right to recover on the naked proposition that an agent had to be kept at the ticket window every minute and every second. This is not the law. Gulf, C. & S. F. v. Sparger, 39 S. W. Rep., 1001.

After having loitered up in town until the train whistled for the station, and rushed down to the depot, even though they made such effort as they say they did to get a ticket, their failure being chiefly the result of an unusual coincidence, to wit, a momentary absence of the lady from the ticket window, and this too, in an effort to serve the traveling public, the duty was certainly on them to use reasonable efforts to reduce their damages to a minimum and to get off at Bangs and buy a ticket.

Under the facts of this case, therefore, it was error to charge that they had a right to tender fare clear to Brownwood. England v. International & G. N. R. R., 73 S. W. Rep., 24; Russell v. Missouri, K. & T. Ry., 12 Texas Civ. App., 630; Texas & P. Ry. Co. v. Cole, 1 S. W. Rep., 629; Pullman Car Co. v. McDonald, 2 Texas Civ. App., 322.

It is the duty of one exposed to injury of any character to use reasonable diligence to reduce the damage to a minimum. The parties can not recover damages for injuries brought on them by their own fault and wilful desire to aggravate their own damages. Southern Pac. Co. v. Patterson, 7 Texas Civ. App., 455.

*Jenkins & McCartney,* for appellee.—Before a railroad company in Texas can demand the payment of four cents per mile for the carrying of a passenger, it must keep its ticket office open and some one in it to sell tickets during the entire thirty minutes provided by law before the departure of its train. Missouri Pac. Ry. Co. v. McClanahan, 66 Texas, 530; Mills v. Missouri, K. & T. Ry. Co., 94 Texas, 242; Atchison, T. & S. F. Ry. Co. v. Dwelle, 24 Pac. Rep., 503; Atchison, T. & S. F. Ry. Co. v. Hogue, 31 Pac. Rep., 698; Nellis v. New York C. Ry. Co., 30 N. Y., 505; Porter v. New York C. Ry. Co., 34 Barb., 356.

Recurring to the authorities cited in support of the proposition that it was appellee's duty to pay the fare demanded in order to reduce their damages, we only say that all such authorities as sustained this proposition were repudiated by the Supreme Court of this State of the recent cases of Texas & P. Ry. Co. v. Payne, 99 Texas, —, and that line of cases that was so well illustrated by this court in Gulf, C. & S. F. Ry. Co. v. Halbrook, 12 Texas Civ. App., 481, was followed and approved.

EIDSON, Associate Justice.—This is a suit brought in the court below by appellee against appellant for damages on account of the alleged wrongful expulsion of appellee by appellant from its train. A trial was had before the court and jury and verdict and judgment rendered and entered for the plaintiff in the sum of $900. A motion for a new trial was made by appellant, and upon hearing said motion, the court below ordered a remittitur of $600, and on the same being filed, judgment was entered in favor of appellee against appellant for the sum of $300, and from that judgment appellant has perfected this appeal.

Appellee, without previously purchasing a ticket, boarded the train of appellant at Santa Anna for the purpose of going to Brownwood, claiming that he applied at the ticket office of appellant at the former place about the time of the arrival of the train and immediately before its departure, for a ticket to Brownwood, and there was no one in said office to sell him such ticket. When the conductor came to him for his ticket, he offered to pay his fare, and handed him some money. The conductor demanded of him four cents per mile, which he refused to pay. The testimony is conflicting as to the amount handed the conductor by appellee, the conductor claiming that appellee handed him only fifty cents, which was the fare to Bangs, the next station, at four cents per mile; and appellee claiming that he handed the conductor sixty-five cents, which was the fare to Brownwood at three cents per

mile, and that the conductor retained fifty cents for the fare at four cents per mile to Bangs, and handed him back fifteen cents, and told him to get off at Bangs and get a ticket to Brownwood.

There was also a conflict in the testimony as to the reasons given by appellee to the conductor when he called on him for his ticket, as to why he did not procure a ticket at Santa Anna. The appellee testified that he told the conductor that he failed to obtain a ticket at Santa Anna on account of there being no one in the ticket office to sell same to him; and the conductor testified that the appellee told him that the reason he did not obtain a ticket at that place was he did not know the time to do so. The conductor, however, testified that later, and when he called on appellee for his ticket after the train passed Bangs and before he was ejected, appellee stated that his failure to procure a ticket at Santa Anna was on account of there being no one in the ticket office to sell same to him. The fact that appellee declined to pay the four cents per mile demanded by the conductor is undisputed. Appellee was ejected from appellant's train after the train passed Bangs, which was the next station to Santa Anna in the direction of Brownwood.

The fact that there was no one in the ticket office of appellant at Santa Anna authorized to sell tickets during the entire period of thirty minutes immediately prior to the departure of the train which appellee boarded, is not controverted by the testimony. The testimony of appellant shows that for an appreciable period of time during the thirty minutes immediately prior to the departure of said train, neither one of the parties who were authorized to sell tickets were in the ticket office. Brown, the agent testified that he left the office when the train arrived and went to the express or baggage car, which was some twenty or thirty feet from the ticket office, and remained until the train departed, and that he left his wife, who was his assistant, and the only other person authorized to sell tickets, in the ticket office during the time he remained away.

His wife, Mrs. Brown, testifies that while her husband was at the express car she went out on the platform twenty or thirty feet away from the ticket office, to inquire of her son about putting the mail on the train; and as she stepped out on the platform she met a lady friend with whom she passed the time of day, and while she was talking to her lady friend she saw her son returning from the train with the mail sack, and she said to him: "You got it in all right," and he said "Yes." As she was returning to the ticket office, and as she reached the door of the waiting room, a man came running from the train with a deposit receipt for a deposit of money he had left with the agent, and wanted to know if he could get his money, and she replied that she would have to see Mr. Brown, the agent, before she could do anything with it, and that she then went to the express car where Mr. Brown was, and asked him what to do with the receipt, and he told her to pay it and take up the receipt, and she then went back to the ticket office as quickly as she could get there, and she was not out of the depot building any more until the train left.

While the precise period of time that Mrs. Brown was out of the ticket office, and no one was there authorized to sell tickets, does not

appear from the testimony, and while it does appear that the period was short, it also appears that it was long enough for her to look after and attend to two separate business matters: One that of seeing that the mail was properly placed on the train, and incidentally of passing the time of day with a lady friend; and the other, ascertaining the correctness and proper disposition to be made of a deposit receipt. In our opinion, the time employed in these matters, if utilized in the ticket office, would have been sufficient to have furnished one or more parties desiring tickets with same. In other words, this testimony shows that appellant's ticket office was not kept open half an hour prior to the departure of the train in question, as contemplated by article 4542, Sayles Rev. Stat., so as to authorize it to charge more than three cents per mile fare.

In the case of Missouri Pac. Ry. Co. v. McClanahan, 66 Texas, 530, the Supreme Court holds that if the railway company fails to keep its ticket office open for half an hour previous to the departure of the train, it can in no case rightfully demand fare of a passenger having no ticket at a rate of more than three cents per mile; and in the case of Fordyce v. Manuel, 82 Texas, 527, it is held that there must also be an agent in the office to sell tickets. In the former case, Judge Gaines delivering the opinion of the court, uses this language: "The section referred to fixes the passenger fare upon all railroads in this State at three cents per mile, and contains the following provisos: 'Provided, however, that where the fare is paid to the conductor, the rate shall be four cents per mile, except from stations where no tickets are sold. . . . Provided further railroads shall be required to keep their ticket offices open half an hour prior to the departure of trains, and upon failure to do so they shall not charge more than three cents per mile.' The first proviso in the section as quoted was obviously intended to induce passengers to buy tickets before entering the cars, and was doubtless inserted in the interest and for the protection of the railroad companies. The object of the second, on the other hand, was to protect passengers against the contingency of having to pay the advanced rate of fare without being afforded ample opportunity to procure tickets. There is nothing in the language of this proviso to indicate that the Legislature intended to make of it other than an absolute rule, and we see no reason why its operation should be made dependent upon attempt or intent of the passenger to buy a ticket. If the railroad companies desire the benefit of the law in this regard they have only to comply with it by keeping their offices open, as the statute requires. The regulation is reasonable and easy to be observed. In the opinion of the court, if these companies keep their ticket offices open half an hour before the departure of their trains, they have a right to claim of passengers entering the cars without tickets fare at the rate of four cents per mile; but if the office be not so kept open, in no case can more than three cents per mile be rightfully demanded."

In the case of Mills v. Missouri, K. & T. Ry. Co., 94 Texas, 253, Judge Williams delivering the opinion of the court approves the holding in the McClanahan case supra in this language: "The decision in the McClanahan case, supra, must be distinguished. It was there held

that if the office was not kept open for the half hour, the carrier could not charge more than the regular fare, whether the passenger had gone to the office for a ticket during the half hour or not. But this was based on the imperative concluding language of the proviso, which does not apply here."

The language thus denominated "imperative" is the concluding words of article 4542, Sayles' Revised Statutes: "And upon failure to do so, they shall not charge more than three cents per mile." In view of the statutory provision referred to, and the construction placed upon same by the above decisions, we are of opinion that it makes no difference whether or not appellee applied for a ticket or used any diligence whatever in attempting to procure one within the half hour prior to the departure of the train. The ticket office not having been kept open half an hour prior to the departure of the train, as required by the law, the conductor had no authority to collect or demand of appellee more than three cents per mile fare. The keeping of the ticket office open half an hour prior to the departure of the train is a condition precedent to the authority to collect more than three cents per mile fare.

The charge of the trial court follows the doctrine laid down in the cases referred to, and is not subject to the criticism of appellant embraced in any of its assignments of error. Appellant not being authorized to demand of appellee more than three cents per mile fare, and the amount due at that rate to his destination having been tendered by appellee, his rights were the same as if he had purchased a ticket, and no duty rested upon him to get off the train at an intermediate station and purchase a ticket. (Missouri Pac. Ry. Co. v. Foreman, 73 Texas, 314.) Appellee being rightfully upon the train, and having tendered to appellant the lawful fare, appellant was under obligation to carry him to his destination, and a refusal to do so was a breach of this obligation which entitled appellee to damages, and appellee rested under no duty to pay the additional fare unlawfully demanded by the conductor, or to get off the train at the intermediate station and buy a ticket, in order to reduce the damages that might result from the breach by appellant of its obligation. (Texas & P. Ry. Co. v. Payne, 99 Texas, —; Gulf, C. & S. F. Ry. v. Halbrook, 12 Texas Civ. App., 481; St. Louis, A. & T. Ry. Co. v. Mackie, 71 Texas, 494; Central K. & B. Ry. Co. v. Strickland (Ga.), 16 S. E. Rep., 353; Cleveland, etc., Ry. Co. v. Beckett (Ind.), 39 N. E. Rep., 431; Ellsworth v. Chicago, B. & Q. Ry., 29 Law Rep. Ann., 175; Atchison T. & S. F. Ry. Co. v. Dickerson, 45 Pac. Rep., 978; Louisville, etc., Ry. Co. v. Wolfe, 27 N. E. Rep., 606; Lake E. & W. Ry. Co. v. Arnold, 34 N. E. Rep., 744; Pittsburg, etc., Ry. Co. v. Russ, 67 Fed. Rep., 664; Cowen v. Winters, 96 Fed. Rep., 932; New York L. E. & W. Ry. v. Winters, 143 U. S., 60; Lake E. & W. Ry. Co. v. Fix, 88 Ind., 381; Krueger v. Chicago, etc., Ry. Co., 68 Minn., 445; Wilsey v. Louisville & N. Ry. Co., 83 Ky., 511; 3 Thomp. on Neg., secs. 3201 to 3203.)

In our opinion the sound doctrine is that when the passenger is rightfully on the train he is entitled to assert the right to remain thereon until he is carried to his destination, and is justified in refusing to leave the train and may resist expulsion, without using violence, but in such a manner as to reasonably show that he is being removed against his

will, and may then recover damages for any increased injuries inflicted on him on account of his rightful refusal to leave the train and through or by his consequent expulsion.

We think the following language used in the opinion in the case of Railway Co. v. Arnold, supra, very pertinent to the subject under consideration. "We do not concur in the doctrine that it was the duty of the appellant to pay the extra fare demanded of him and afterwards settle the question in dispute with the company; nor do we think that his failure to do so can be considered in mitigation of damages. It is true, the amount demanded was trifling, but the principle involved was the same as if the sum demanded had been a large one. However much we may commend the conduct of that person who yields his rights to avoid a difficulty, it is nevertheless the privilege of every person to stand upon his strict legal rights, and the law does not require him to yield them to make concessions in order to avoid trouble. . . . If there was a doubt, it was as much a duty of appellant's agent to forego ejecting appellee as it was appellee's duty to pay the fare when demanded and continue his journey. Appellant chose to stand upon what it conceived to be its strict legal rights. It can not now be heard to complain if appellee chose to do the same. It comes with ill grace for the appellant, after it has pushed what it believed to be its rights to the last extremity, to say that because it offered to carry appellee if he would pay his fare the damages ought to be mitigated. . . . The appellee was placed in a very unpleasant position before the passengers on the train. By conduct, if not by words, he stood charged with an attempt to defraud the railroad company, and of endeavoring to ride from Noblesville to Indianapolis without paying the fare therefor. If he had paid the extra fare demanded, a legitimate inference might be drawn that he was guilty of the dishonesty attributed to him. Whether he should pay and stay on the train, or refuse to pay and suffer expulsion, was a matter which the law left to the sole discretion of appellee."

In our opinion the principle of law to be deduced from the authorities referred to is: It is proper to require due care on the part of a person to avoid increasing his own damages, but the reason of the principle ceases when the damage to be avoided is a voluntary injury threatened by the other party who claims the benefit of the doctrine; and, as stated by an eminent authority, for the carrier to say to a passenger: "You must submit to extortion in order to prevent me from assaulting you, else you will be deemed in law to have caused your own damage needlessly," is equivalent to an attempt by the carrier to profit by its own wrongful threats. It amounts to a claim for exemption from liability for an assault, because the wrongdoer first offered his victim a choice between assault and extortion.

The testimony to the effect that appellee tendered to the conductor the full amount of fare at three cents per mile from Santa Anna to Brownwood when the conductor demanded his fare between Stanta Anna and Bangs, is practically uncontroverted. But, if it be conceded that the testimony of the conductor conflicts with the testimony of appellee to this effect, his (the conductor's) testimony to the effect that he would not have received less than four cents per mile rendered proof of tender

unnecessary. Hence there was no error in the refusal by the court below of appellant's special charge number 2.

The paragraph of the charge of the court below complained of in appellant's fifteenth assignment of error was favorable to appellant; and therefore, it had no ground for complaint against same.

The amount of the judgment as reduced by the remittitur is not, in our opinion, excessive, and such amount is fully warranted by the evidence; and in our opinion the conduct of the jury complained of in appellant's twenty-fifth and twenty-sixth assignments or error does not constitute reversible error, especially in view of the remittitur.

In view of our holding that the appellant was not entitled to demand more than three cents per mile fare of appellee if its ticket office was not kept open half an hour prior to the departure of the train, and our finding that appellant's own testimony shows that the ticket office was not so kept open, appellant's assignments of error relating to the exclusion or admission of evidence becomes unimportant.

For reasons already stated, appellant's other assignments of error are overruled. There being no reversible error pointed out in the record, the judgment of the court below is affirmed.

*Affirmed.*

Writ of error refused.