## Ponder v. Lexington & Eastern Railway Company.

(Decided March 26, 1915.)

### Appeal from Powell Circuit Court.

1. Carriers—Passengers—Payment of Fare—Regulation.—A railroad company has the right to prescribe a regulation by which a higher fare may be collected from passengers who pay their fare upon the train, than from those who buy tickets before boarding the train.

2. Carriers—Passengers—Tickets—Payment of Fare.—In order to enforce a rule requiring passengers to purchase tickets before entering its train, or to pay a higher fare than that required of passengers who buy tickets, a railroad company is required to notify the traveling public of the existence of the rule. Actual notice to each passenger of the existence of the rule is not necessary; copies of the rule printed in large type, and posted in conspicuous places in the several ticket offices of the company, constitute sufficient notice to the traveling public of the existence of the rule.

3. Carriers—Passengers—Payment of Fare—Expulsion From Train. —A passenger who has not provided himself with a ticket before boarding the car, and refuses to pay the higher fare prescribed by the company's regulation, may be expelled from the train; but as a condition precedent to this right of expulsion, an opportunity, at least reasonable, and such as the statute requires where a statute exists, must have been afforded by the carrier to the passenger, not himself in fault, to provide himself with the required ticket.

4. **Carriers—Passengers—Payment of Fare.**—Under Section 784 of the Kentucky Statutes, which requires a railroad company to keep its ticket office open for the sale of tickets at least thirty minutes immediately preceding the schedule time of the departure of its passenger trains, and to post upon its bulletin board the fact that any regular passenger train is delayed for as much as thirty minutes in its arrival at a station, a railroad company which kept its ticket office open for thirty minutes immediately preceding the schedule time of the departure of a train which was delayed seven minutes in its arrival, sufficiently complied with the statute; and, a passenger who applied at the ticket office for a ticket after the expiration of the prescribed thirty minutes had elapsed, was not exempted from the rule requiring him to buy a ticket, or pay the higher fare.

5. **Carriers—Tickets—Sale of.**—So long as the ticket office of a railroad company remains open for the sale of tickets, the company must serve the public by selling tickets, although the schedule time for the departure of the train may have expired.

ROBERT H. WINN and A. T. STEWART for appellant.

SAMUEL H. WILSON, JOHN D. ATKINSON & SON, B. D. WAR-FIELD and C. H. MOORMAN for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE MILLER—Affirming.

The appellant, T. J. Ponder, who was the plaintiff below, having been ejected from one of appellee's passenger trains, sued for damages; and the jury having found for the defendant, Ponder appeals. He complains of the court's instructions to the jury, insisting that they were, in effect, a peremptory direction to find for the company.

There is not much dispute about the material facts of the case.

Ponder lived at Filson Station, about five and one-half miles west of Stanton, in Powell County. On the afternoon of February 24, 1914, Ponder went to Stanton for the purpose of attending to some business with the Deposit Bank at that place. His purpose was to return home on the regular evening train. Ordinarily, the time between the two trains was not very long; and as the train upon which Ponder went to Stanton was late, perhaps half an hour, the time left for business in Stanton was shortened to that extent.

Having hurriedly attended to his business at the bank, which he left partly unfinished as to details, Ponder started back to the railroad station, running a portion of the way. Shortly before he reached the station he heard

the train coming, and it rolled into the station just as Ponder entered it. Ponder says he went to the ticket office to buy a ticket, but found no agent at the window where it usually sold tickets. He says he then went around to the door in front of the office to apply for a ticket, but found no one there. He then boarded the train; and when Martin, the conductor, called for his ticket, Ponder answered that he could not get one at the depot. Ponder handed Martin seventeen cents, which was the regular fare between Stanton and Filson Station. Martin demanded ten cents more, which the rule of the company required him to collect whenever a passenger taking the train at a ticket station had failed to procure a ticket. Ponder said he did not have the ten cents, and did not think it was right for Martin to require him to pay it. Martin replied, however, that Ponder must either pay the ten cents or get off the train, or he would have to put him off. Ponder then arose and started toward the door of the car. He returned, however, and resumed his seat, saying that he would not get off, and that Martin would have to put him off; whereupon Martin pulled the bellcord, stopped the train, and ejected Ponder.

Ponder says Martin grabbed him by his coat collar, jerked him out of the seat, twisted him around, and gave him a shove toward the door, and that the brakeman assisted Martin as they passed him. While Martin admits he grasped Ponder by the lapels of his coat, he denies he used any more force than was necessary to eject him; and the brakeman denies that he touched Ponder.

Ponder was not injured in any way, and was ejected from the car at a point about two hundred yards from the station. He walked home that night, a distance of six miles or more, through the snow; and from the exposure he says he contracted a cold.

The uncontradicted testimony shows the returning train was seven minutes late when it arrived at Stanton.

Collins, the station agent at Stanton, says he kept the ticket office open at least thirty minutes before the train was due; that he was selling tickets in the usual way; and that it was open until after the train departed. His duties, however, required him to leave the ticket office when the train came in, to get his orders, and to receive and discharge baggage. He says he never left the ticket office for that purpose until after the train

called for the signals at the crossing; that on this occasion he left the office just as the train was pulling into the station; and that he was absent from the office about three minutes.

Ordinarily, the train remained at the station about one minute, the time depending, of course, on the number of passengers getting off or on the train.

Collins says he did not see Ponder at all on the day in question; and further, that when he went out of the office to attend to the baggage, he left the office in charge of Bohannon, a young man who assisted him in his office duties. Bohannon says he remained in the office all the time while Collins was absent; that he was acquainted with Ponder, and that Ponder did not apply for a ticket.

The defendant put in evidence the following rule of the company:

"Conductors will collect Ticket Fares from passengers boarding trains at stations from which tickets are not sold; however, from stations at which they have been given an opportunity to purchase tickets, and have failed to do so, train fares must be collected on the basis of ten (10) cents in excess of the ticket fares. Collections should be made to destination of passengers only when within conductors' runs, and under no circumstances to points beyond. When collections of ticket fares are made by conductors, proper explanation must be given on 'report of cash fares collected.'"

Defendant also showed that it had posted in the office, in a prominent place near the ticket window, the following notice:

"Lexington & Eastern Railway Company
Buy Tickets from Agents
Before Entering Trains
Train Fares are 10 Cents
Higher Than Ticket Fares.

Effective Nov. 1, 1911.          Charles Scott,
General Passenger Agent."

There also was evidence introduced by the plaintiff, to the effect that the company had not enforced its rule above set forth in several instances shortly before the occasion of Ponder's ejectment from the train; but the charge was stoutly controverted by the company.

The testimony of both Ponder and the company was supported, in a measure, by the testimony of other wit-

nesses; the substance, however, of the testimony, and the issues between them, are as has been stated above. Sharply drawn, the issue was, whether Ponder had been afforded a reasonable opportunity to procure a ticket.

The court instructed the jury, as follows:

"1st. The jury are instructed that upon the plaintiff's failure to pay the 10 cents extra fare, it became the conductor's duty, and he had the right under the law, to remove the plaintiff from the train, but in so doing it was his duty to use no more force than was reasonably necessary to effect such removal, and the jury should find for the defendant, unless they believe as stated in the second instruction.

"2d. If the jury believe from the evidence that in removing the plaintiff from the train the defendant's employes used more force than was reasonably necessary in order to effect or accomplish his removal from the train, the jury should find for the plaintiff and fix the damages at such a sum as they may believe from the evidence will fairly and reasonably compensate him for any humiliation or injury to his feelings that they may believe from the evidence he sustained by reason of the use of such excessive force if the jury find any was used, but if any damages are allowed the plaintiff, the total should not exceed $5,000.00, the sum claimed by the plaintiff in his petition.

"3d. Nine of the jury can make a valid verdict, but if all the jury do not agree the verdict must be signed by all who agree to it."

Section 784 of the Kentucky Statutes, reads, in part, as follows:

"All companies shall keep their ticket offices open for the sale of tickets at least *thirty minutes immediately preceding the schedule time of departure* of all passenger trains from every regular passenger depot from which such trains start or at which they regularly stop; * * * and when any regular passenger train is delayed for thirty minutes in its arrival at a station which is a telegraph office, it shall cause to have posted in some conspicuous place in the waiting room for passengers at such station the fact of and the length of time of the delay as soon as the same is ascertained by its agent at such station."

Appellant does not controvert the proposition, now well settled in this and in most jurisdictions, that the carrier may lawfully require a passenger who has failed to

provide himself with a ticket before boarding a train, to pay an extra charge, not based upon the distance traveled.

This question was carefully considered by this court nearly thirty years ago, in Wilsey v. L. & N. R. R. Co., 83 Ky., 516, where we said:

"The testimony was conflicting in this case as to the amount of fare demanded of the appellant by the conductor. If he demanded more than the usual rate and that fixed by the company, then it was an illegal demand with which the appellant was not bound to comply, and the appellee had no right by reason of the refusal to eject him from the train. But in front of this is a legal question of more importance. A railroad company has an undoubted right to prescribe such regulations as are suitable to enable it to execute its important duties.

"The exercise of this power is necessary in order that it may both provide for the safety and comfort of its passengers and protect itself from imposition. Reasonable regulations looking to these ends should be upheld, because the security of the traveling public and the interest of the railroad so require. For instance, a higher rate may be collected of passengers who pay their fare upon the train than of those who purchase tickets before entering the cars. This discrimination is allowed, because it tends to convenience in the transaction of the business, and to the proper accountability of the company's agents. But it must be general or uniform as to the public, and be carried out in good faith by the railroad corporation, accompanied with a reasonable opportunity for those who desire to do so to purchase tickets before entering the cars. If they do not avail themselves of the privilege, then they are at fault and must pay conductor's fare. Such a rule affords proper checks upon the accounting officers of the railroad, and protects it in a reasonable manner against possible fraud and dishonesty. (Hilliard v. Goold, 34 N. H., 230; Stephen v. Smith, &c., 29 Vt., 160; State v. Chovin, 7 Iowa, 204; Railroad Co. v. South, 43 Ill., 176)."

This rule has been repeatedly approved by this court in subsequent cases. See L. H. & St. L. Ry. Co. v. Joplin, 21 Ky. L. R., 1380, 55 S. W., 206; Strull v. L. & N . R. R. Co., 25 Ky. L. R., 678, 76 S. W., 181; I. C. R. R. Co. v. Winslow, 27 Ky. L. R., 329, 84 S. W., 1175; Southern Railway Company in Kentucky v. Hawkins, 28 Ky. L. R., 364, 89 S. W., 258. See also 4 R. C. L., Sec. 553, p. 1102,

and the note in 20 L. R. A., 483, where the cases on the subject are collected.

In 4 Elliott on Railroads (2d Ed.), Section 1603, it is said:

"As a general rule, it should keep its ticket office open, with a competent person in attendance ready to sell tickets, a reasonable time before the departure of each train according to the schedule, but not necessarily up to the very instant the train moves, or the time of actual departure where it is late. A traveler does not, however, make a sufficient effort to obtain a ticket if he merely goes to the window of the ticket office in ample time, and, not seeing the agent there, immediately enters the car without making any effort to see if the agent was in the office or to attract his attention. So, if he arrives too late to buy a ticket before the train starts, or if, for any reason, it is his own fault, and not the fault of the company, that he fails to get a ticket, he can not complain if he is expelled upon his refusal to pay the extra fare."

In 2 Hutchinson on Carriers (3d Ed.), Section 1033, it is further said:

"So it is well settled that a regulation or by-law of the carrier is not unreasonable which provides that when such tickets are not procured before the commencement of the journey, and the carrier is therefore put to the inconvenience of collecting from the passenger his fare during its progress, the price of the carriage shall be more than would have been charged for the ticket, and that upon the refusal of the passenger to pay the higher rate, not extortionate in amount, he shall be ejected. And if adopted in good faith, and with a view to facilitate the business of the carrier, there can be certainly nothing unreasonable or unjust in such rules, especially in the case of railway carriers.

"But as a condition precedent to the existence of this right of expulsion for the refusal to procure a ticket or to pay the higher fare, an opportunity, at least reasonable, and such as the statute requires where a statute exists, must have been afforded by the carrier to the passenger, not himself in fault, to provide himself with the required ticket. If, therefore, no office be kept or opened at the proper time, nor other adequate facilities be provided for the purpose of supplying passengers with them, or if the office provided for the purpose be closed before the time fixed by law or by a rule of the carrier, and for either reason the passenger has been unable to ob-

tain a ticket, the higher rate cannot be lawfully demanded.''

In Wicks v. L. & N. R. R. Co., 15 Ky. L. R., 605, decided by the Superior Court of Kentucky, the syllabus reads as follows.

''A rule of a railroad company requiring passengers to purchase tickets before entering its train or to pay the conductor a higher rate of fare than that required of passengers who purchase tickets, is reasonable; but in order to enforce such a rule the company is required to notify the traveling public of its existence, and to keep its ticket offices open for a reasonable time before the departure of trains. But actual notice to each passenger of the existence of the rule is not necessary; copies of the rule printed in large type and posted in conspicuous places in the several ticket offices of the company are sufficient notice to the traveling public of the existence of the rule to require them to comply with its provisions. And the fact that the passenger did not reach the station in time to purchase a ticket before the departure of the train furnishes no reason why the rule requiring the payment to the conductor of the higher rate of fare may not be enforced against him.

''The plaintiff in this case having failed to purchase a ticket, the conductor had the right to eject him from the train upon his refusal to pay the extra fare required by the rule of the company, and no force being used by the conductor and no indignities or insults offered him, he has no cause of action against the company.''

The general rule is stated as follows, in 4 R. C. L., Section 561, p. 1111:

''It is the duty of a railroad company requiring tickets to be purchased at stations to furnish a convenient and accessible place for the sale of such tickets, with a competent person in attendance ready to sell them, which place should be open and accessible to all passengers for a reasonable time before the hour fixed for the departure of each train. It has been held, however, that in the absence of statutory requirement this duty of the carrier does not extend to keeping its ticket office open until the actual departure of the train, but only up to the advertised time for its departure. It has also been considered unreasonable to require the agent at a small station, who is required to perform many other duties in addition to the sale of tickets, to remain in the ticket office up to the last moment before the departure of trains. The time

during which the ticket offices of railroad companies must be kept open is subject to express statutory regulation in some of the states, and a penalty is imposed for failure to conform to such provisions. Some of these statutes require merely the opening of ticket offices a certain length of time prior to the schedule time of departure of each train, while others provide further that the office shall be kept open until the departure of each train, and some contain an additional requirement that the waiting room shall be kept open in all cases where ticket offices are required to be kept open, and for the same length of time.''

See generally, L. & N. R. R. Co. v. Commonwealth, 102 Ky., 300, 53 L. R. A., 149; Mills v. M. K. & T. R. Co., 94 Tex., 242, 55 L. R. A., 497.

That the rule adopted by the appellee was a reasonable one, there can be no doubt; and that the notice thereof to the public was sufficiently given, there is no contradiction.

As between the conductor and a passenger, the ticket must usually be treated as conclusive evidence of the passenger's rights. If this were not so, the conductor would be compelled to accept the statements of the passenger in preference to and in contradiction of the ticket relied on by the passenger. The respective rights of the passenger and the conductor, as between themselves, was stated in Lexington & Eastern Railway Co. v. Lyons, 104 Ky., 23, as follows:

''It is generally, and, we think, properly, held that the ticket accepted by the passenger must usually be treated as conclusive evidence of the passenger's rights as between him and the conductor, leaving the passenger to his action against the carrier if he has not been given such a ticket as the contract called for; otherwise the conductor would be compelled to accept the statements of the passenger in preference to, and contradictory of, the ticket presented to and relied on by himself. Nevertheless, in one case, Hufford v. Railroad Co., 64 Mich., 631 (31 N. W., 544), it has been held, though we think, incorrectly, to be the duty of the conductor to accept the passenger's statement until he finds out it is not true, no matter what the ticket contained in words, figures, or other marks. As between the two, the conductor may properly rely upon the ticket as it reads, and, as the passenger can not reasonably demand more, it follows that the expulsion of the latter from the train in a case like the one before us

cannot be regarded as tortious unless accompanied with unreasonable and unnecessary force or insult.''

But, where the passenger has no ticket, his rights are fixed by the reasonable rules of the company, and the law applicable to his case. Stanton was a station at which tickets were sold, and under the company's rule, it was Ponder's duty to buy a ticket before he entered the train, or pay the extra flat charge of ten cents. But the rule requiring this to be done must be read in connection with the statute above quoted, which required the company to keep its ticket office open for at least thirty minutes immediately preceding the schedule time of the departure of the train. If the company failed to so keep its office open and an agent there to sell tickets, the rule calling for the extra fare did not become operative, and appellant was entitled to be treated as if he had boarded the train at a station where tickets were not sold.

So, the final question in this case is: Did the company comply with the statute by keeping its office open the prescribed time, and thus place upon Ponder the duty of procuring a ticket before he boarded the train, or the alternative duty of paying the extra fare?

The instructions to the jury assumed that the company had, under the uncontradicted evidence, complied with the statute; that Ponder had thus failed, through his own fault, to procure a ticket; and they confined the scope of the jury's inquiry to the single issue as to whether the conductor used more force than was necessary to eject Ponder.

It will be noticed that the statute requires the company to keep its ticket office open for the sale of tickets at least thirty minutes immediately preceding the *schedule time* of departure of the train; and, the company insists it fully complied with the statute in this instance, by keeping its office open for the sale of tickets for at least thirty minutes before and for seven minutes after the schedule time for the train's departure.

Appellant's contention, however, means, although it is not so expressed, that the company should have kept its ticket office open for the sale of tickets until the departure of the train, regardless of the schedule time of the train's departure, or the fact that it was running behind its schedule time.

Appellant insists that if the train should be half an hour late, he should not be required to go to the station half an hour ahead of the arrival of the train, buy his

ticket, and then wait for the arrival of the train; that he had the right to buy his ticket at any time before the train departed; and upon the company's failure to afford him that privilege at any time before its departure, he was not bound by the rule.

But the statute is not unreasonable in its operation, either in its application to the company or to the passenger. It specifically requires the company, in case its train is delayed for thirty minutes in its arrival at a station which is a telegraph office, as in this case, to promptly post the fact of the delay, and its length of time, conspicuously in the waiting room, for the information of passengers. This posting makes a new schedule for the train; and, under the statute, the company is required to keep its office open up to the time of the departure of the delayed train, as shown by the new schedule.

The legislature, in its wisdom, has said that a delay of thirty minutes to the passenger, without notice, is not unreasonable; and that if the delay is less than thirty minutes, the passenger must act upon the regular schedule time as to buying his ticket in order to exempt himself from the operation of the extra fare rule, unless the ticket office remains open after the expiration of the schedule time of departure, for the sale of tickets. So long, however, as the office remains open for the sale of tickets, the company must serve the public by selling tickets, although the schedule time for the departure of the train may have passed.

But, in the case at bar, the train was seven minutes late; and the uncontradicted evidence shows that the ticket office was kept open for the sale of tickets until about seven minutes after the schedule time of departure of the train, when the agent left the office to attend to outside duties. This he had the right to do under the statute and the facts of this case, and appellant had no right to complain. If the train had been on time, he could not have boarded it, since he did not reach the station in time to do so. He has no right to complain that the company did not afford him an opportunity to buy a ticket after the expiration of the schedule time for the departure of the train, whether that schedule be fixed by the original schedule or by the new schedule made by the posting of the notice of the delay. When a railroad company has kept its ticket office open for thirty minutes preceding the time of the departure of the train according to its original or posted schedule, it has complied with the

statute; and the failure of the passenger to buy his ticket within that period does not make the company liable to him, or exempt him from the operation of the rule as to the buying of tickets before boarding a train. The fact that the train may be less than thirty minutes behind its schedule time, does not require the company to keep its office open until the delayed train arrives and departs; it only requires the company to keep its office open for the thirty minutes immediately preceding the schedule time of departure.

The evidence showing, without contradiction, that appellee complied with the statute by keeping its ticket office open until after the schedule time for the departure of the train, it had the right to eject appellant, and the only question left to be submitted to the jury was whether the conductor used more force than was necessary in doing so; and as that question was properly submitted under the instructions, the judgment of the trial court will be affirmed.

It is so ordered.